# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| COMPANHIA BRASILEIRA CARBURETO de CALCIO – CBCC , | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 1:01cv000646 (RMC) |
| APPLIED INDUSTRIAL MATERIALS CORPORATION, et al., | ) ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| COMPANHIA FERROLITAS MINAS GERAIS – MINASLIGAS, CIA. DE FERROLIGAS DA BAHIO – FERBASA, RIMA INDUSTRIAL, S/A, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:01cv0002678 (RMC) |
| v. | ) ) ) | |
| APPLIED INDUSTRIAL MATERIALS CORPORATION, et al. | ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS ELKEM METALS, INC.'S AND ELKEM AS'S MOTION TO DISMISS COMPLAINTS FOR LACK OF PERSONAL JURISDICTION, FAILURE TO STATE A CLAIM, AND LACK OF STANDING

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), Defendants

Elkem Metals, Inc. ("Elkem Metals") and Elkem AS ("Elkem AS") (collectively, the "Elkem

Defendants") hereby move to dismiss the identical Complaints filed by Companhia Brasileira,

Carbureto de Calcio ("CBCC"), and Companhia Ferrolitas Minas Gerais – Minasligas, CIA, de

Ferroligas da Bahio – Ferbasa, Rima Industrial, S/A (collectively, "Minasligas, et al.").

Plaintiffs' Complaints should be dismissed because both their antitrust and RICO claims, at the time of filing, were untimely. Moreover, even if their stale claims had been otherwise viable when this action was filed in 2001, those claims were brought in the wrong court as to the Elkem Defendants. Further, plaintiffs lack standing because, as alleged in their Complaints, any alleged injuries under these statutes were caused not by the alleged acts of the defendants, but by rulings of the International Trade Commission and the Department of Commerce.

Because the federal claims fail, the plaintiffs' common law claims should be dismissed as well for want of jurisdiction. Apart from this, however, the common law claims fail on the merits, as all are barred by the applicable statutes of limitations, and/or fail for lack of standing and/or to state a cognizable claim.

As required by Local Rule 7(a), the reasons supporting this Motion are set forth in the attached Memorandum in Support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Failure to State a Claim, and Lack of Standing, and the affidavits attached thereto. A Proposed Order is attached as required by Local Rule 7(c).

WHEREFORE, Defendants Elkem Metals, Inc. and Elkem AS respectfully request that this Court enter an Order dismissing the Complaints with prejudice in their entirety.

Respectfully submitted,


**ECKERT SEAMANS CHERIN &
MELLOTT, LLC**

By:      *Edward J. Longosz, II*
Edward J. Longosz, II (# 368932
1747 Pennsylvania Avenue, NW
Suite 1200
Washington, D.C. 20006-4604
(202) 659-6619
*elongosz@eckertseamans.com*

Dale Hershey
Pa. I.D. No. 00658
(Admitted *Pro Hac Vice*)
Michael R. Borasky
Pa. I.D. No. 21330
Audrey K. Kwak
Pa. I.D. No. 200527
600 Grant Street, 44th Floor
Pittsburgh, PA  15219
(412) 566-6000
*dhershey@eckertseamans.com*

Counsel for Defendants Elkem
Metals, Inc., and Elkem AS

Dated:  October 30, 2009

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2009, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


*Edward J. Longosz, II*
Edward J. Longosz, II

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| COMPANHIA BRASILEIRA CARBURETO de CALCIO – CBCC , | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 1:01cv000646 (RMC) |
| APPLIED INDUSTRIAL MATERIALS CORPORATION, ELKEM METALS COMPANY, INC., ELKEM A/S, GLOBE METALLURGICAL, INC., CC METALS & ALLOYS, INC., SKW TROSTBERG AG, and THE FERROALLOYS ASSOCIATION, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

| | | |
|---|---|---|
| COMPANHIA FERROLITAS MINAS GERAIS – MINASLIGAS, CIA. DE FERROLIGAS DA BAHIO – FERBASA, RIMA INDUSTRIAL, S/A, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 1:01cv0002678 (RMC) |
| v. | ) ) ) | |
| APPLIED INDUSTRIAL MATERIALS CORPORATION, ELKEM METALS COMPANY, INC., ELKEM A/S, GLOBE METALLURGICAL, INC., CC METALS & ALLOYS, INC., SKW TROSTBERG AG, and THE FERROALLOYS ASSOCIATION, | ) ) ) ) ) ) | |
| Defendants. | | |

**MEMORANDUM IN SUPPORT OF MOTIONS OF**
**DEFENDANTS ELKEM METALS, INC., AND ELKEM AS**
**TO DISMISS COMPLAINTS FOR LACK OF PERSONAL JURISDICTION,**
**FAILURE TO STATE A CLAIM, AND LACK OF STANDING**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... iii

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 2

ARGUMENT .......................................................................................................... 4

I.    THIS COURT LACKS PERSONAL JURISDICTION
      OVER THE ELKEM DEFENDANTS.......................................................... 4

      A.    Legal Standard ................................................................................ 5

            (1)   Burden of Proof.................................................................... 5
            (2)   Requirements For Proper Exercise Of Jurisdiction........... 5

      B.    Relevant Allegations in the Complaints ......................................... 7

      C.    Plaintiffs Have Not Met Their Burden To Establish
            Sufficient Jurisdictional Ties To The District To Warrant
            The Exercise Of Jurisdiction Over Either Elkem Defendant ........... 10

            (1)   There Is No General Jurisdiction Over Either
                  Elkem Defendant.................................................................. 10
            (2)   There Is No Specific Jurisdiction Over Either
                  Elkem Defendant.................................................................. 11

      D.    Plaintiffs Have Alleged No Contacts Sufficient To Meet
            The Constitutional Requirements Of Due Process To
            Exercise Jurisdiction Over Either Elkem Defendant ...................... 13

II.   THE COMPLAINTS SHOULD BE DISMISSED BECAUSE
      ALL OF PLAINTIFFS' CLAIMS ARE BARRED BY THE
      APPLICABLE STATUTES OF LIMITATIONS........................................... 16

      A.    Legal Standard ................................................................................ 16

      B.    Relevant Allegations of Complaint ................................................. 17

      C.    Plaintiffs' Antitrust Claims Are Time-Barred ................................. 20

      D.    Plaintiffs' RICO Claims Are Time-Barred...................................... 24

      E.    Plaintiffs' Common Law Claims Also Are Barred by
            Applicable Statutes of Limitations ................................................. 25

      (1)     Plaintiffs' Fraud Claims Are Time-barred ..................................... 25

      (2)     Plaintiffs' Abuse of Process Claims Are Time-barred ................. 25

      (3)     Plaintiffs' Malicious Prosecution Claims Are Time-barred .......... 26

**III.**    **PLAINTIFFS' ANTITRUST, RICO AND FRAUD CLAIMS (COUNTS I THROUGH IV) SHOULD BE DISMISSED FOR LACK OF STANDING, BECAUSE PLAINTIFFS HAVE FAILED TO ALLEGE ANTITRUST OR OTHER INJURY THAT CAN BE ATTRIBUTED TO THE ALLEGED ACTIONS OF THE ELKEM DEFENDANTS** ............................................. 26

    **A.**     **Legal Standard** ......................................................................... 26

    **B.**     **Plaintiffs Lack Antitrust Standing.** ....................................... 28

      (1)     Plaintiff Has Not Suffered an Antitrust Injury. ............................ 29

      (2)     Potential For Duplicative Recovery. ............................................. 30

    **C.**     **Plaintiffs Lack Standing to Assert Their Claims Under RICO.** ......... 31

    **D.**     **Plaintiffs Lack Standing to Assert Their Claim for Common Law Fraud** ...................................................... 33

**IV.**    **COUNTS II THROUGH VI OF PLAINTIFFS' COMPLAINTS FAIL TO STATE COGNIZABLE CLAIMS UPON WHICH RELIEF CAN BE GRANTED AND MUST BE DISMISSED** ...................... 34

    **A.**     **Plaintiffs Have Failed To State A Claim Under RICO as There Is No "Pattern" Of Racketeering Activity Alleged in the Complaint** .................................................................... 34

    **B.**     **Plaintiffs Have Failed to State Claims for Common Law Fraud** .................................................................... 37

    **C.**     **Plaintiffs Have Failed to State Claims for Abuse of Process** .............. 37

    **D.**     **Plaintiffs Have Failed to State Claims for Common Law Malicious Prosecution** ................................................... 39

**CONCLUSION** .................................................................................. 41

## TABLE OF AUTHORITIES*

**Page**

### CASES

*3D Global Sol'ns, Inc. v. MVM, Inc.*, 552 F. Supp. 2d 1 (D.D.C. 2008) ...................................... 34

*Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans, Inc.*,
    525 F.3d 8 (D.C. Cir. 2008) ...................................................................................... 17

*AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849 (D.C. 1981) ........................................ 10

*Antoine v. U.S. Bank Nat. Ass'n*, 547 F. Supp. 2d 30 (D.D.C. 2008) ................................... 34, 37

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) ........................................................ 27, 32

*Asahi Metal Indust. Co. v. Superior Court of California, Solano County*,
    480 U.S. 102 (1987) ...................................................................................................... 6

*Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784 (5th Cir. 1990) ..................................................... 7

*\*Associated Gen. Contractors v. Cal State Council of Carpenters*,
    459 U.S. 519 (1983) ................................................................................................. 28, 32

*\*Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris, Inc.*,
    241 F.3d 696 (D.C. Cir. 2001) ................................................................................... 28,30

*Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990) ........................................... 29

*Baltierra v. W.V. Bd. of Med.*, 253 F. Supp. 2d 9 (D.D.C. 2003) ............................................... 10

*Barr v. Clinton*, 370 F.3d 1196 (D.C. Cir. 2004) .................................................................... 17

*Beard v. Edmondson & Gallagher*, 790 A.2d 541 (D.C. 2002) .................................................. 23

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................. 17

*BPA Intern., Inc. v. Kingdom of Sweden*, 281 F.Supp.2d 73 (D.D.C. 2003) ............................... 13

*Brunson v. Kalil & Co., Inc.*, 404 F. Supp. 2d 221 (D.D.C. 2005) .............................................. 7

*Byrd v. Envtl. Prot. Agency*, 174 F.3d 239 (D.C. Cir. 1999) .................................................... 35

---

\* Authorities upon which we chiefly rely are marked with asterisks.

*Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104 (1986)......................... 29

*Caribe Trailer Sys., Inc. v. Puerto Rico Maritime Shipping Auth.*, 475 F.Supp. 711, 717
(D.D.C. 1979), *aff'd*, 1980 WL 130478 (D.C. Cir. 1980) ......................... 13

*Cemex, S.A. v. United States*, 790 F. Supp. 290 (CIT 1992), *decision aff'd*,
989 F.2d 1202 (Fed. Cir. 1993)......................... 29

*Chrysler Corp. v. Gen. Motors Corp.*, 589 F.Supp. 1182 (D.D.C. 1984) ......................... 13

*COMSAT Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515 (D.D.C. 1995) ......................... 6

*\*Daboub v. Gibbons*, 42 F.3d 285, 290-91 (5th Cir. 1995)......................... 23, 24

*Demery v. Montgomery County, MD*, 602 F.Supp.2d 206 (D.D.C. 2009) ......................... 39

*Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1 (D.D.C. 2003)......................... 13

*\*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
48 F.3d 1260 (D.C. Cir. 1995)......................... 36

*Elemary v. Philipp Hotzmann A.G.*, 533 F. Supp. 2d 116 (D.D.C. 2008) ......................... 35

*\*Ellipso, Inc. v. Mann*, 541 F. Supp. 2d 365 (D.D.C. 2008) ......................... 36

*El-Fadl v. Central Bank of Jordan*, 75 F.3d 668 (D.C. Cir. 1996)......................... 10

*Environmental Research Int'l, Inc. v. Lockwood Greene Engineers, Inc.*,
355 A.2d 808 (D.C. 1976)......................... 11

*First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375 (D.C. Cir. 1988)......................... 10

*Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658 (D.C. Cir. 1996)......................... 32

*Freiman v. Lazur*, 925 F. Supp. 15 (D.D.C. 1996) ......................... 6, 11, 12

*General Aircraft Corp. v. Air America, Inc.*, 482 F. Supp. 3 (D.D.C. 1979) ......................... 23

*GTE New Media Services Inc. v. Ameritech Corp.*, 21 F. Supp. 2d 27 (D.D.C. 1998),
*remanded on other grounds sub nom, GTE New Media Services Inc. v.
BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000) ......................... 5, 6, 10, 16

*H.J. Inc. v. NW. Bell Tel. Co.*, 492 U.S. 229 (1989)......................... 35

*Harran Transp. Co. v. Nat'l Trailways Bus Sys.*, 1985 WL 2349
(D.D.C. Aug. 5, 1985)......................... 11,16

*Hawaii v. Standard Oil Co.*, 405 U.S. 251 (1972)................................................................ 29

*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992)............................................ 27, 32

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)............................................................... 31

*In re Industrial Silicon Antitrust Litigation*, Master File No. 95-2104
    (W.D. Pa., filed on Dec. 29, 1995)........................................................................ 19, 22

*In re Molecular Diagnostics Labs. v. Hoffman-LaRoche Inc.*,
    402 F. Supp. 2d 276 (D.D.C. 2005)...................................................................... 21, 23

*In re Relafen Antitrust Litig.*, 286 F.Supp. 2d 56 (D. Mass. 2003)...................................... 20

*In re Tobacco/Governmental Health Care Costs Litig.*, 83 F. Supp. 2d 125
    (D.D.C. 1999)................................................................................................................ 32

*In re Vitamins Antitrust Litig.*, 270 F.Supp.2d 15 (D.D.C. 2003)......................................... 5

*In re Vitamins Antitrust Litig.*, Misc. No. 99-0197, 2001 U.S. Dist. LEXIS 25073
    (D.D.C. Oct. 21, 2001).................................................................................................... 5

*In re Vitamins Antitrust Litig.*, 2000 WL 1475705 (D.D.C. May 9, 2000) ....................... 20, 21

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ............................................... 15

*Jung v. Ass'n of Am. Med. Colleges,* 300 F.Supp.2d 119 (D.D.C. 2004) ............................. 5

*Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44 (2d Cir .1991)........................................... 7

*Kulko v. California Superior Court*, 36 U.S. 84 (1978) ................................................... 15, 16

*Larson v. Northop Corp.*, 21 F.3d 1164 (D.C. Cir. 1994) .................................................... 20

*Lopez v. Council on American-Islamic Relations Action Network, Inc.*,
    2009 WL 3069661 (D.D.C. Sept. 28, 2009) .............................................................. 32

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................... 27, 32, 34

*McCarthy v. Kleindienst*, 741 F.2d 1406 (D.C. Cir. 1984)................................................... 38

*McFarlane v. Esquire Magazine*, 74 F.3d 1296 (D.C. Cir. 1996).......................................... 7

*McGee v. Intern. Life Ins. Co.*, 355 U.S. 220 (1957).......................................................... 14

*Meditech Intern. Co. v. Minigrip, Inc.*, 648 F. Supp. 1488 (N.D. Ill. 1986)......................... 29

*Midland Export, Ltd. v. Elkem Holdings, Inc., 947 F. Supp. 163 (E.D. Pa. 1996),
    aff'd, 3d Cir. (not reported), cert. denied, 523 U.S. 1119 (1997) ........................ 19, 21, 30

Morowitz v. Marvel, 423 A.2d 196, 198 (D.C. 1980) ............................................................. 38, 39

*Naartex Consulting Corp. v. Watt, 722 F.2d 779 (D.C. Cir. 1983) ................................................ 11

*Nader v. Democratic Nat'l Comm., 567 F.3d 692 (D.C. Cir. 2009) ............................................... 26

Nelson v. Nationwide Mortg. Corp., 659 F. Supp. 611 (D.D.C. 1987) ......................................... 33

Novak-Canzeri v. HRH Prince Turki Bin Abdul Aziz Al Saud,
    864 F. Supp. 203 (D.D.C. 1994) ............................................................................................ 6

Papasan v. Allain, 478 U.S. 265 (1986) ........................................................................................ 17

Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117
    (2d Cir. 2007) ....................................................................................................................... 28

Prunte v. Universal Music Group, 484 F. Supp. 2d 32 (D.D.C. 2007) ......................................... 35

Rann v. Chao, 154 F. Supp. 2d 61 (D.D.C. 2001) ......................................................................... 27

Reuber v. United States, 787 F.2d 599 (D.C. Cir. 1986) ............................................................... 10

Richards v. Duke Univ., 480 F. Supp. 2d 222 (D.D.C. 2007) ....................................................... 25

Riddell v. Riddell Washington Corp., 866 F.2d 1480 (D.C. Cir. 1989) ........................................ 25

Rotella v. Wood, 528 U.S. 549 (2000) ........................................................................................... 24

Rush v. Savchuk, 444 U.S. 320 (1980) ............................................................................................. 5

Sealed Air Corp. v. U. S. Intern. Trade Commission, 645 F.2d 976 (1981) ................................. 29

Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985) ................................................................ 27, 35

Shaffer v. Heitner, 433 U.S. 186 (1977) ................................................................................... 14, 15

Shapiro Lifschitz & Schram, P.C. v. Hazard, 24 F. Supp. 2d 66 (D.D.C. 1998) ...................... 541

Shirk v. Garrow, 505 F. Supp. 2d 169 (D.D.C. 2007) .................................................................. 17

Sierra Club v. EPA, 292 F.3d 895 (D.C. Cir. 2002) ..................................................................... 27

Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26 (1976) ............................................................ 27

*Smith v. Shimizu*, 544 F. Supp. 2d 15 (D.D.C. 2008) .................................................. 17

*Stegeman v Aetna Ins. Co.*, 1980 WL 1815, 1980-1 CCH Trade Cases ¶ 63256
    (E.D. Mich 1980) ................................................................................................ 22

*Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006), *cert. denied*, 549 U.S. 1209 (2007)................... 29

*Thompson v. Capitol Police Bd.*, 120 F. Supp. 2d 78 (D.D.C. 2000)........................................... 27

*Tri-State Hosp. Supply Corp. v. United States*, 2007 WL 2007587
    (D.D.C. July 6, 2007)........................................................................................... 34

*United States ex rel. Miller v. Bill Harbert Intern. Const.*,
    505 F. Supp. 2d 1 (D.D.C. 2007) .......................................................................... 16

*United States v. Ferrara*, 54 F.3d 825 (D.C. Cir. 1995)......................................................... 16

*United States v. Kubrick*, 444 U.S. 111 (1979).................................................................. 16

*United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116 (D.D.C. 2000)....................................... 5

*United States v. SKW Metals & Alloys* (Docket Nos. 98-1090(L),
    98-1091(CON), 98 1139(XAP), W. Dist. of New York)........................................... 19

*\*United States v. Smithfield Foods, Inc.*, 332 F. Supp. 2d 55 (D.D.C. 2004) ............ 10, 11, 13, 17

*Washington Medical Center, Inc. v. Holle*, 573 A.2d 1269, 1285 (D.C. 1990)........................... 38

*\*Western Assocs. Ltd., ex rel. Ave. Assocs. Ltd. v. Mkt. Square Assocs.*,
    235 F.3d 629 (D.C. Cir. 2001) ........................................................................ 34, 36

*Williams v. Central Money Co.*, 974 F. Supp. 22 (D.D.C. 1997) ......................................... 25

*Williams v. City Stores*, 192 A.2d 534, 537 (D.C. 1963)................................................... 38

*Willis v. Willis*, 655 F.2d 1333 (D.C. Cir. 1981).................................................. 6, 14, 15

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ....................................... 14, 15

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971)................................... 20, 24

## FEDERAL STATUTES

15 U.S.C. § 1 ......................................................................................................... 2

15 U.S.C. §§ 15, 15b (2000) .............................................................................. 2, 28

18 U.S.C. §§ 1961(5), 1962, 1964(c) .......................................................... 2, 28, 31, 35

19 U.S.C. §§ 1337, 1671-1677n ........................................................................ 4, 29

## STATE STATUTES

D.C. CODE § 12-301(4), (8) .............................................................................. 25, 26

D.C. CODE § 13-334(a) ....................................................................................... 10

D.C. CODE § 13-423 ............................................................................................ 6

## TREATISES

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 146 cmt. d (1971) ........................................ 33

**INTRODUCTION**

Defendants Elkem Metals, Inc. ("Elkem Metals")[1] and Elkem AS ("Elkem AS")[2] (collectively, the "Elkem Defendants") have moved to dismiss the complaint filed by Companhia Brasileira, Carbureto de Calcio ("CBCC"), and the identical, later-filed complaint of Companhia Ferrolitas Minas Gerais – Minasligas, CIA, de Ferroligas da Bahio – Ferbasa, Rima Industrial, S/A (collectively, "Minasligas, et al.").[3]  These lawsuits allege a price-fixing conspiracy in the ferrosilicon industry dating back to 1989.  The same conspiracy was the subject of criminal prosecutions and treble damages actions that terminated over a decade ago.  Plaintiffs here have brought their claims much too late and, even if these stale claims otherwise were viable, they have plainly brought them against the Elkem Defendants in the wrong court.  Moreover, plaintiffs here lack standing because, as their Complaints disclose, they were not directly injured by the alleged acts of the defendants but by rulings of the International Trade Commission and the Department of Commerce.  As explained in more detail below, both Complaints should be dismissed.

---

[1] Elkem Metals, Inc. is the successor in interest to the original defendant Elkem Metals Company, Inc.

[2] Elkem AS is the current name of the original defendant Elkem A/S.  Throughout this brief the current name, "Elkem AS", will be used rather than Elkem A/S.

[3] CBCC's complaint was filed on March 26, 2001.  On December 28, 2001, an identical complaint was filed by CBCC's attorneys on behalf of Minasligas, et al., and the actions were consolidated for all purposes by court order. The Elkem Defendants submit this memorandum in support of their motions to dismiss both complaints (the "Complaints").  Citations in this memorandum are to the CBCC complaint.

## BACKGROUND

Plaintiffs, Brazilian producers of ferrosilicon, have filed identical six-count Complaints alleging that the Elkem Defendants conspired with others to fix the prices of ferrosilicon sold in the United States. They further allege that, as part of that conspiracy, defendants also defrauded the United States International Trade Commission ("ITC") and Department of Commerce ("DOC"). Plaintiffs assert that, as a result of that alleged conspiracy, the ITC and DOC imposed antidumping duties that were the direct source of the alleged harm to plaintiffs. (*See* Complaint ("Compl."), Preliminary Statement.) Plaintiffs allege that defendants have violated section 1 of the Sherman Act (15 U.S.C. § 1) (Count I), and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 (Counts II and III), and, based on the same alleged conduct, are liable for fraud (Count IV), abuse of process (Count V), and malicious prosecution (Count VI). Each Count of both Complaints is fatally defective and should be dismissed.

At the outset, this Court lacks personal jurisdiction over the Elkem Defendants, as each lacks sufficient contacts with this District for the exercise of specific or general jurisdiction over them. Neither Elkem Defendant transacts any business in the District of Columbia, let alone business of a "substantial character" that would lead it to "reasonably anticipate being haled into court," for the exercise of general jurisdiction. The sole conduct allegedly occurring in this District cannot be considered for jurisdictional purposes under the well-established "government contacts" doctrine. Moreover, assertion of personal jurisdiction over either Elkem Defendant in this District would not satisfy due process, because neither company has "purposefully availed" itself of the privileges of conducting business in this jurisdiction. Subjecting either company to suit here would enable purely "random, fortuitous, or attenuated contacts" to frustrate the central

purpose of the Due Process Clause, namely, to give a degree of predictability to the legal system, and would ignore notions of fair play and substantial justice.

Even if this Court had jurisdiction over the Elkem Defendants, all of the claims asserted in the Complaint, construed in the light most favorable to the plaintiffs, are time-barred. The Sherman Act and RICO claims, which are subject to four-year statutes of limitations, are time-barred under even the most generous construction of plaintiffs' allegations. Plaintiffs' common law fraud, malicious prosecution and abuse of process claims also are barred by the statutes of limitations applicable to those claims.

Plaintiffs' antitrust, RICO and common law fraud claims (Counts I — IV) also should be dismissed because plaintiffs lack standing to assert any such claims. Plaintiffs' Complaints acknowledge that the injury they allege was the direct result of the actions of third parties—the government agencies that determined that plaintiffs were importing ferrosilicon at unfair prices and that a domestic industry was injured by the imports, thus justifying the imposition of the antidumping duties that were harmful to the plaintiffs. Thus, the plaintiffs have not sufficiently alleged a requisite injury in fact that is neither conjectural nor hypothetical, nor have plaintiffs alleged a causal connection between their claimed injury and the action of defendants that is not

the result of independent action of third parties (the Department of Commerce and the International Trade Commission).[4]

Finally, Plaintiffs' RICO and common law claims (Counts II-VI) fail to state claims upon which relief can be granted, and should be dismissed.

## ARGUMENT

## I. THIS COURT LACKS PERSONAL JURISDICTION OVER THE ELKEM DEFENDANTS.

Plaintiffs have not alleged facts sufficient to support the exercise of personal jurisdiction over Elkem Metals or Elkem AS, because neither company has contacts with the District of Columbia sufficient to support the valid exercise of general or specific jurisdiction over them. In fact, Elkem AS has no such contacts whatsoever. Furthermore, the few contacts that Elkem Metals allegedly had with this District—which are alone insufficient to support jurisdiction— cannot be imputed to Elkem AS, as plaintiffs have not alleged any specific facts to justify a piercing of the corporate veil. Thus, the Complaints neither allege a basis for the exercise of jurisdiction under the District of Columbia's long-arm statute, nor do they satisfy the requirements of due process, so that the Complaints against the Elkem Defendants should be dismissed for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).

---

[4] Unsurprisingly, the plaintiffs gloss over the elaborate and multifaceted process that precedes the imposition of antidumping duties. The duties come about through responsibilities shared by the Department of Commerce and the International Trade Commission ("ITC") under the Tariff Act of 1930 (The laws governing the antidumping duty provisions are found in Title VII, Sections 701-783 of the Tariff Act of 1930 as amended, and updated by the Uruguay Round Agreements Act (P.L. 103-465) (Dec. 8, 1994); these provisions are codified at 19 U.S.C. §§ 1671-1677n). The Department of Commerce must make a determination as to whether goods are being imported at an "unfair price." This determination is made *without* input from the domestic industry affected by the imports. The ITC then investigates the domestic industry and makes a determination as to whether the industry is materially injured by the unfairly priced imports. If the ITC finds that the imports are the cause of material injury to the domestic industry, the Department of Commerce will determine the appropriate level of duty and will impose that duty. The plaintiffs assert that they were injured by such a duty. The plaintiffs have never challenged the Department of Commerce determination that they were importing ferrosilicon at unfair prices and have not alleged that the defendants misled the Department of Commerce. The basis of the plaintiffs' Complaints is the allegation that they were harmed by a conspiracy among the defendants and not by the agencies that made the relevant determinations and imposed the duties. Clearly, their injury, so called, was caused by agency actions.

## A. <u>Legal Standard</u>

### (1) <u>Burden of Proof</u>

Plaintiffs bear the burden of establishing personal jurisdiction over each defendant and may not rely on conclusory allegations to do so. *See GTE New Media Services Inc. v. Ameritech Corp.*, 21 F.Supp.2d 27, 36 (D.D.C. 1998), *remanded on other grounds sub nom, GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000). Nor can plaintiffs aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant. *See Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980). In evaluating whether it has personal jurisdiction, a court need not treat all of plaintiffs' allegations as true but instead "may receive and weigh affidavits and other relevant matter to assist in determining the jurisdictional facts." *United States v. Philip Morris Inc.*, 116 F.Supp.2d 116, 120 n. 4 (D.D.C. 2000).  Where, as here, the parties have engaged in jurisdictional discovery, plaintiffs bear a "special, higher burden in order to demonstrate jurisdiction."[5] *See Jung v. Ass'n of Am. Med. Colleges,* 300 F.Supp.2d 119 (D.D.C. 2004), citing *Shapiro Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 66, 69 (D.D.C. 1998) ("[A]lthough ordinarily a plaintiff need only establish a prima facie case that personal jurisdiction exists to survive a motion to dismiss, in situations where the parties are permitted to conduct discovery on the jurisdictional issue a plaintiff must prove personal jurisdiction by a preponderance of the evidence."); *In re Vitamins Antitrust Litig.*, 270 F.Supp.2d 15, 20 (D.D.C. 2003) (citing *In re Vitamins Antitrust Litigation*, Misc. No. 99-0197, 2001 U.S. Dist. LEXIS 25073, at *22 (D.D.C. Oct. 21, 2001)) (same).

### (2) <u>Requirements For Proper Exercise Of Jurisdiction</u>

---

[5] Plaintiffs served jurisdictional interrogatories on Elkem AS and received answers to those interrogatories.

Because the Elkem Defendants are not physically present in the District, plaintiffs must show that the defendants had the requisite "contacts" with the District. The District of Columbia "long-arm" statute, D.C. Code § 13-423, enumerates the possible bases for personal jurisdiction over nonresidents: section 423(a)(1) extends personal jurisdiction to persons "transacting any business in the District of Columbia"; and section 423(a)(4) applies to any person "causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue . . . in the District of Columbia." Both provisions are limited by section 423(b), which states that, to assert jurisdiction over a defendant on the long-arm basis, "only a claim for relief arising from the acts enumerated in this section may be asserted against him," thereby barring "claims unrelated to the acts forming the basis for personal jurisdiction." *Willis v. Willis*, 655 F.2d 1333, 1336 (D.C. Cir. 1981). A plaintiff must allege specific facts evidencing purposeful activity in the District, by which the defendant invoked benefits and protections of its laws. *Novak-Canzeri v. HRH Prince Turki Bin Abdul Aziz Al Saud*, 864 F. Supp. 203 (D.D.C. 1994). The purposeful activities must consist either of conducting business or causing tortious injury in the District, and tortious injury suffered elsewhere does not provide a basis for jurisdiction. *Freiman v. Lazur*, 925 F. Supp. 15 (D.D.C. 1996).

Moreover, even when the long-arm test has been met, personal jurisdiction over a nonresident can be exercised only where constitutional due process standards are met. *GTE New Media Servs. Inc. v. Bellsouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). "The constitutional touchstone of the due process determination is 'whether the defendant purposefully established minimum contacts in the forum state.' " *COMSAT Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515, 520 (D.D.C. 1995) (quoting *Asahi Metal Indust. Co. v. Superior Court of California, Solano County*, 480 U.S. 102, 108-09 (1987)).

B. **Relevant Allegations in the Complaints**

Plaintiffs allege in a conclusory manner that "each of the defendants reside, are found, have agents, transact affairs, do business, and/or are licensed to do business or maintain offices within this District. The acts alleged herein were carried out in part, and Plaintiff's claim arose in part, within this District." (Compl. ¶ 3.) Notably, with respect to the Elkem Defendants, the sole allegations of conduct occurring in the District relate to petitions submitted to the ITC by certain other defendants -- not Elkem AS or Elkem Metals.[6] Indeed, plaintiffs do not allege that either Elkem Defendant was a petitioner seeking the imposition of the duties in question and neither was a petitioner.

When the Complaints were filed,[7] Elkem Metals was a New York partnership with its principal place of business in Pennsylvania and selling ferrosilicon in the United States. (Compl. ¶ 6.) Elkem Metals "was not a signatory on the ferrosilicon antidumping petitions," but plaintiffs allege that it "participated in the decision to file and paid a part of the costs associated with the filing of those ferrosilicon petitions." (*Id.*) Plaintiffs also allege that Elkem Metals "convinced and/or consented to its unions representing its employees being signatories on those ferrosilicon petitions." *Id.* Plaintiffs allege that certain Elkem Metals employees met with other alleged co-conspirators on various occasions in Pittsburgh, Pennsylvania, sent letters by way of U.S. mail to other purported co-conspirators (*id.* ¶¶ 55(a), (b), (d), (m)), and submitted a completed

---

[6] The Complaints also reference the filing of an action by Elkem Metals in the Court of International Trade. (Compl. ¶¶ 39, 41, 56(u).) That court, however, is located in New York, not in this District.

[7] Jurisdictional contacts existing at the time the complaint was filed are the relevant contacts to be considered. *See Brunson v. Kalil & Co., Inc.*, 404 F. Supp. 2d 221 (D.D.C. 2005) (noting that a court determines "personal jurisdiction based only on the acts that had occurred at the time the Complaint was filed, not those acts occurring after Plaintiff filed her Complaint" and citing *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1300-01 (D.C. Cir. 1996) (refusing to find personal jurisdiction based on an article appearing in the Washington Post after plaintiff filed his complaint); *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 52 (2d Cir .1991) (noting that personal jurisdiction is based on "defendant's contacts with the forum state at the time the lawsuit was filed"); *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 n. 1 (5th Cir. 1990) (the "relevant time for determining jurisdiction is the filing of the complaint").).

producer's questionnaire to the ITC regarding ferrosilicon imports (*id.* ¶ 55(m)).  Finally, plaintiffs allege that Elkem Metals filed an opposition to the ITC's request for comments as to whether a changed circumstances review was warranted and filed briefs in opposition to that review.  (*Id.* ¶ 36.)

Plaintiffs admit that, when the Complaints were filed, Elkem AS was a Norwegian corporation, with a principal place of business in Norway.  (*Id.* ¶ 7.)  Elkem AS manufactured ferrosilicon in Norway and Iceland and sold ferrosilicon and other products in the world market. In the United States it sold ferrosilicon principally through its subsidiary partnerships, of which Elkem Metals was the general partner. (*See* Affidavit of Anthony C. LaRusso ("LaRusso Aff."), attached hereto as Exhibit A.[8])  The subsidiary partnerships also manufactured ferrosilicon and purchased some grades of ferrosilicon from the parent, for resale to customers in the United States.  (*Id.*)  Although plaintiffs make the conclusory assertion that "Elkem AS participated in the fraudulent conduct, conspiracy and racketeering activity that forms the basis for Plaintiff's suit," and that Elkem AS "directed and controlled Elkem [Metals'] business of marketing and selling ferrosilicon throughout the United States" (Compl. ¶ 7), plaintiffs allege no facts to support this conclusory assertion and, indeed, fail to make any additional allegations specifically directed to Elkem AS.

Elkem Metals operates separately and with much independence from the parent.  (*See* Affidavit of Geir I. Kvernmo ("Kvernmo Aff."), attached hereto as Exhibit B.)  It had its own manufacturing facilities in the United States, separate officers, separate sales staff, a separate employment group, separate legal counsel, a separate profit center, separate bank accounts and a separate identity.  (*See* LaRusso Aff.)

---

[8] These affidavits were submitted with the original Elkem Metals and Elkem AS Motions to Dismiss (filed in June of 2001 (Dkt. 13) and February of 2002 (Dkt. 36), respectively), and are resubmitted with the instant Motions to Dismiss for the convenience of the Court.

As established by affidavits submitted in support of its prior motion to dismiss, when CBCC's complaint was filed, Elkem Metals had no offices in this District. (Kvernmo Aff.)  It made no sales to customers in this District and it did not regularly enter this District to conduct business. (*Id.*) Elkem Metals had no agents in the District of Columbia, was not licensed to do business in the District, had no customers in the District, and did not solicit sales or deliver products to purchasers in the District. (*Id.*) Elkem Metals did not supply services in the District, neither owned nor occupied real property in the District, and neither insured nor acted as a surety with respect to any matter in the District. (*Id.*)

Similarly, at the time CBCC's complaint was filed in 2001, Elkem AS had no offices in this District. (Affidavit of Marius Grønningsæter ("Grønningsæter Aff."), attached hereto as Exhibit C.) It made no sales to customers in this District and it did not regularly enter this District to conduct business. (*Id.*) Elkem AS had no agents in the District of Columbia, was not licensed to do business in the District, had no customers in the District, and did not solicit sales or deliver products to purchasers in the District. (*Id.*) Elkem AS did not supply services in the District, did not own or occupy real property in the District, and did not insure or act as a surety with respect to any matter in the District. (*Id.*)

Plaintiffs' Complaints are as significant for what they omit as for what they affirmatively allege. Plaintiffs fail to allege that they suffered an injury in this District as a result of a tort committed here. It is telling that nowhere do plaintiffs identify the district in which they purportedly suffered any injury – presumably, the payment of any antidumping duty – which was paid (if at all) at the various ports of entry, and not in this District. Thus, the plaintiffs' allegations do not satisfy the tortious injury prong of the District's long-arm statute.

C. **Plaintiffs Have Not Met Their Burden To Establish Sufficient Jurisdictional Ties To The District To Warrant The Exercise Of Jurisdiction Over Either Elkem Defendant**

Plaintiffs have not made a prima facie showing that the Court has personal jurisdiction over the Elkem Defendants, as the few attenuated contacts alleged, and conclusory allegations in the Complaints, cannot form the basis for the valid exercise of jurisdiction by this Court over either company. *Baltierra v. W.V. Bd. of Med.*, 253 F. Supp. 2d 9, 13 (D.D.C. 2003) (citing *Reuber v. United States*, 787 F.2d 599, 599 (D.C. Cir. 1986) (*per curiam*)) ("When a defendant asserts that [the] Court lacks personal jurisdiction, the burden is on the plaintiff to prove that jurisdiction can be exercised."). Neither Elkem Defendant has engaged in the requisite "purposeful activity by . . . invoking the benefits and protections of [this District's] laws." *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378-79 (D.C. Cir. 1988); *United States v. Smithfield Foods, Inc.*, 332 F.Supp.2d 55, 60 (D.D.C. 2004). Plaintiffs' "bare allegations or conclusory statements" are insufficient to support the exercise of jurisdiction over either company. *GTE New Media Servs., Inc. v. Ameritech Corp.*, 21 F. Supp. 2d 27, 36 (D.D.C. 1998).

(1) **There Is No General Jurisdiction Over Either Elkem Defendant**

To support general jurisdiction, section 13-334(a) of the D.C. Code demands a "'continuing corporate presence in the forum . . . directed at advancing the corporation's objectives.' " *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 675 (D.C. Cir. 1996) (quoting *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 851 (D.C. 1981)). Elkem Metals had no such contacts with this District. Similarly, Elkem AS had no contacts with this District. Although plaintiffs allege generally that each defendant is found in the District, has agents here, transacts affairs here, does business here, and is licensed to do business or maintain offices here

(Complaint ¶ 3), not a single agent, business, and/or office is specifically named, and indeed, none of these allegations is true with regard to either Elkem Defendant.

Thus, there is absolutely nothing to support the exercise of general jurisdiction over either Elkem Defendant in this Court. *See, e.g., Smithfield Foods, Inc.*, 332 F. Supp. 2d at 60 (dismissing action against corporation for lack of personal jurisdiction, which had no officers or any persons employed, was not registered to do business, did not own, lease, or maintain facilities or property, had no D.C. post office box, telephone, or facsimile number, and had no bank or other financial account in the District of Columbia).

### (2) **There Is No Specific Jurisdiction Over Either Elkem Defendant**

In the absence of general jurisdiction, plaintiffs can establish personal jurisdiction only if the Elkem Defendants' conduct "caus[ed] tortious injury" *in the District*. *Freiman*, 925 F. Supp. 15. Because any attenuated contacts (1) are insufficiently connected to any injury—which would have occurred, if at all, at the ports where the duty would have been paid—and (2) constitute "government contacts" that cannot be considered for purposes of personal jurisdiction, this Court does not have specific jurisdiction over either Elkem Defendant.

The "government contacts" doctrine applies to defendants whose only contacts with the District consist of activity before federal agencies to secure their own proprietary interests. *See Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983). Simply put, such contacts may not be considered to establish personal jurisdiction, as to do so would contravene the fundamental purpose of the doctrine—namely, to protect the "[F]irst [A]mendment guarantee to petition the government for redress of grievances," including petitions that constitute efforts to "solicit commercial opportunities." *Harran Transp. Co. v. Nat'l Trailways Bus Sys.*, 1985 WL 2349, *4, n.14 (D.D.C. Aug. 5, 1985) (internal citations omitted, granting in part motion to dismiss for lack of jurisdiction based on government contacts doctrine, where sole contacts with

11

district consisted of sales of buses to government agencies based in Washington); *Naartex*, 722

F.2d at 787 (affirming dismissal for lack of personal jurisdiction over numerous defendants

whose only contacts with the District were lobbying activities before federal agencies to secure

their own proprietary interests, even though it was alleged that nonresident defendants were

"alleged coconspirators"); *see also Freiman*, 925 F. Supp. at 24 (finding that the government

contacts principle applied to defendant's allegedly fraudulent application to the U.S. Copyright

Office, and could not serve as a basis for asserting personal jurisdiction).[9]

Here, neither Elkem Defendant even filed a petition or engaged in other activities in the

District of its own volition.  Plaintiffs have alleged only that Elkem Metals provided financial

support for antidumping petitions filed by others and submitted questionnaire responses to the

ITC.  (*E.g.*, Compl. ¶¶ 6, 7.)  Pursuant to the government contacts doctrine, these contacts cannot

be considered for jurisdictional purposes, and therefore do not vest this Court with jurisdiction.

Moreover, Elkem AS is not even alleged to have submitted questionnaire responses in

connection with the ITC petitions.  Even if Elkem Metals' contacts with the ITC could be

considered, they cannot be attributed to Elkem AS, as plaintiffs have failed to allege any specific

facts that would justify such a disregard of the corporate form.  Rather, plaintiffs have alleged

merely that Elkem AS "is the parent company of defendant Elkem Metals Co." and "participated

in the fraudulent conduct, conspiracy and racketeering activity that forms the basis for plaintiffs

suit" by "direct[ing] and controll[ing] Elkem's business of marketing and selling ferrosilicon

throughout the United States."  (Compl. ¶ 7.)  These conclusory allegations cannot support the

imputation of any contacts of Elkem Metals with the District to its parent, Elkem AS.  *See, e.g.,*

---

[9] *See also Environmental Research Int'l, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808 (D.C. 1976), in
which the court noted that, because the District is the seat of national government, there is a "correlative need for
unfettered access to federal departments and agencies for the entire national citizenry."  *Id.* at 813. To allow a
defendant's contact with a federal instrumentality to serve as a contact for personal jurisdiction analysis "would
threaten to convert the District of Columbia into a national judicial forum."  *Id.*

*BPA Intern., Inc. v. Kingdom of Sweden*, 281 F. Supp. 2d 73 (D.D.C. 2003) (conclusory allegation that foreign parent did business in District was insufficient to constitute prima facie showing of pertinent jurisdictional facts to justify imputing subsidiary's contacts to parent).

Further, in an antitrust action asserted against a parent and subsidiary, the court may exercise jurisdiction over the parent based on the subsidiary's activities within the district only if the relationship between the two "is such that the subsidiary may be considered the agent or the alter ego of the parent." *Caribe Trailer Sys., Inc. v. Puerto Rico Maritime Shipping Auth.*, 475 F.Supp. 711, 717 (D.D.C. 1979), *aff'd*, 1980 WL 130478 (D.C. Cir. 1980) (citations omitted).  In order for the parent to be amenable to suit, the parent must exercise "continuing supervision and intervention in the subsidiaries' affairs." *Chrysler Corp. v. Gen. Motors Corp.*, 589 F.Supp. 1182, 1195 (D.D.C. 1984); *see Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 10 (D.D.C. 2003).  Elkem Metals, although a subsidiary of Elkem AS, operates independently from Elkem AS, with separate officers, sales staff, manufacturing facilities, employment group, legal counsel, profit center, separate bank accounts, and corporate identity.  (*See* LaRusso Aff.)[10]

There are no allegations or evidence that these entities did not properly maintain corporate formalities and are not separate from one another in every material way.  Accordingly, there is no basis on which to impute any jurisdictional contacts, however tenuous, of Elkem Metals to its parent, Elkem AS.

### D.  **Plaintiffs have alleged no contacts sufficient to meet the constitutional requirements of due process to exercise jurisdiction over either Elkem Defendant**

---

[10] To determine whether a subsidiary's contacts can vest a court with jurisdiction over the parent, courts look to the "totality of relationship", including "whether parent has capacity to influence subsidiaries' major business decisions, whether [they] have same officers and directors, whether [they] maintain separate books and accounts, whether integrated sales system exists between [them], and whether [they] present [a] common marketing image." *Smithfield Foods, Inc.*, 332 F. Supp. 2d at 62.  "The essential element required before a court can find that one corporate entity was transacting business through an alter ego is ***control over the conduct that allegedly violated the antitrust laws.***" *Id.* (emphasis added, internal citations omitted).

Similarly, the Complaints do not support constitutional jurisdiction, as they do not allege conduct by either Elkem Defendant that would cause either company to expect to find itself subject to suit in the District. According to the Complaints, the only conduct of Elkem Metals (but not Elkem AS) in this District are: (1) the submission of answers to questionnaires in the District (conduct which, for the reasons set forth above, are not to be considered in determining personal jurisdiction); and (2) incidental support of petitions that were actually filed in the District, but to which neither Elkem Defendant was a party.

In determining whether the exercise of jurisdiction satisfies due process, the Supreme Court in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), required a two-part analysis. The Court recognized that the doctrine of "minimum contacts" performed two related but distinguishable functions. First, the doctrine protects defendants from the burden of litigating in distant forums.[11] Second, in recognition of the territorial limitations on the power of the states, the doctrine requires sufficient affiliating circumstances connecting the forum state and the nonresident defendant to empower the court to require that defendant to appear. *See World-Wide Volkswagen*, 444 U.S. at 293-94; *see Willis*, 655 F.2d 1333.

Under the first prong, reasonableness and fairness clearly make it wrong to adjudicate plaintiffs' claims in this District. Initially, "[t]he District of Columbia has little interest in providing a forum to a nonresident plaintiff." *See McGee v. Intern. Life Ins. Co.*, 355 U.S. 220, 223 (1957). Nor does the District have any interest in the subject matter of these lawsuits; the purported conspiracy is not alleged to have been made or performed in the District and the claims asserted primarily implicate issues of federal antitrust and business law, not the laws of this jurisdiction. Finally, the District has enacted no jurisdictional statute that indicates its

---

[11] Relevant considerations, grouped under "the rubric of reasonableness and fairness," include an "assessment of the burden on the defendant considered in the light of the forum state's interest in adjudicating the dispute, the plaintiff's need for some forum in which to litigate and the interstate judicial system's interest in efficient resolution of controversies. *See Willis v. Willis*, 655 F.2d 1333 (citing *World-Wide Volkswagen*, 444 U.S. at 292).

manifest interest in the subject matter in dispute. *See Shaffer v. Heitner*, 433 U.S. 186 (1977)

(noting that had "Delaware perceived its interest in securing jurisdiction over corporate

fiduciaries to be as great as Heitner suggests, we would expect it to have enacted a statute more

clearly designed to protect that interest.") In short, there is scant, if any, interest on the part of

the District of Columbia to outweigh the burden placed on the nonresident Elkem Defendants to

defend litigation in this District.

The second part of the *World-Wide Volkswagen* test requires affiliating circumstances

sufficient to empower a state to assert jurisdiction over a nonresident defendant. Elkem Metals'

limited contacts with the District do not provide sufficient affiliating circumstances to justify the

exercise of jurisdiction over it, much less Elkem AS. *See* 436 U.S. 84.

In *Kulko v. California Superior Court*, the Court reaffirmed the principle, first stated in

*International Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945), that the nature and quality of

the contacts control the propriety of the forum state's assertion of jurisdiction, and determine

whether the defendant has purposefully availed himself of the benefits and protections of a given

forum. 36 U.S. 84, 84 (1978). The Court distinguished acts taken in the context of a family

relationship from those designed to solicit business.[12] Thus, even though a contact may be

directly related to the transaction at issue, the "telling question is whether that contact was

designed to derive a benefit from the forum state which would justify the assertion of

jurisdiction." *Willis*, 655 F.2d at 1339.

Here, according to the Complaints, Elkem Metals' sole direct contact with this District

consisted of answering questionnaires at the ITC's request in connection with petitions filed by

---

[12] In *Kulko*, the former wife of the defendant brought suit in California to secure increased child support payments from the defendant on behalf of their children. Although the defendant was domiciled in New York, the California courts asserted in personam jurisdiction over him because he had "purposely availed himself of the benefits and protections of California" by sending his daughter to live with her mother there. The Supreme Court reversed, holding that the exercise of in personam jurisdiction by the California courts over the father, a New York domiciliary, would violate the due process clause of the Fourteenth Amendment. 326 U.S. at 318.

others.  Such a limited contact could not constitute purposeful availment under *Kulko*, *Willis*, or more recent law of this District.  *United States v. Ferrara*, 54 F.3d 825, 831 (D.C. Cir. 1995) (a "single responsive mailing cannot form the basis of finding of 'transacting business" sufficient to constitute purposeful availment of the protection of the forum state's laws).  Merely responding to a questionnaire at an address located in a jurisdiction could not give rise to a reasonable anticipation that the responder will be haled into court there, but rather was, at best, an incidental contact made at the request of a government agency.  Indeed, the principles underlying the government contacts doctrine compel the conclusion that such contacts cannot support jurisdiction under the rigors of the due process clause.[13]  It is plain that subjecting either Elkem Defendant to suit here would "offend traditional notions of fair play and substantial justice." Accordingly, plaintiffs have failed to show "minimum contacts" by either Elkem Defendant sufficient to satisfy the constitutional requirements of due process.  *See GTE New Media Servs. Inc.*, 199 F.3d at 1347 (internal citations omitted).

For these reasons, the Complaints should be dismissed against the Elkem Defendants for lack of personal jurisdiction.

## II.  THE COMPLAINTS SHOULD BE DISMISSED BECAUSE ALL OF PLAINTIFFS' CLAIMS ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS.

Even if this Court could exercise jurisdiction over the Elkem Defendants, each of plaintiffs' claims is barred by the applicable statute of limitations.[14]

### A.  Legal Standard

---

[13] One of the primary purposes of the government contacts doctrine is to protect the "[F]irst [A]mendment guarantee to petition the government for redress of grievances," including petitions that constitute efforts to "solicit commercial opportunities."  *Harran Transp. Co.*, 1985 WL 2349, *4, n.14.

[14] "[S]tatutes of limitations represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *United States ex rel. Miller v. Bill Harbert Intern. Const.*, 505 F. Supp. 2d 1, 6 (D.D.C. 2007) (citing *United States v. Kubrick*, 444 U.S. 111, 117 (1979)).

To withstand a motion to dismiss under rule 12(b)(6), plaintiffs must state a claim upon which relief can be granted. "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n. 4 (D.C. Cir. 2008) ("a complaint needs some information about the circumstances giving rise to the claims"); *Shirk v. Garrow*, 505 F. Supp. 169, 172-73 (D.D.C. 2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court must construe the factual allegations in the complaint in the light most favorable to the plaintiffs and must grant the plaintiffs the benefit of all inferences that can be derived from the facts as alleged. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citations omitted). But "the court need not accept inferences drawn by [the plaintiff] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Id.*; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986). Ultimately, the complaint must state a plausible claim for relief. *Smith v. Shimizu*, 544 F. Supp. 2d 15, 16 (D.D.C. 2008) (citing *Twombly*, 550 U.S. at 546); *United States v. Smithfield Foods, Inc.*, 332 F. Supp. 2d 55 (D.D.C. 2004).

## B. <u>Relevant Allegations of Complaint</u>

From the Complaint it is clear that the plaintiffs' case is based on alleged injuries suffered some time prior to 1995. Plaintiffs have alleged first that Elkem Metals was part of a conspiracy to fix prices of ferrosilicon beginning in 1989, with regard to which Elkem Metals entered a guilty plea in 1995 that was a matter of public record. (Complaint ¶¶ 18, 27.) Plaintiffs then assert that, as a part of that alleged conspiracy, the alleged conspirators "devised and implemented a fraudulent scheme intended to eliminate foreign competition and insulate themselves from attempt by foreign competitors to undercut artificially high prices engendered

by conspiracy" by "deceiving and defrauding the Government into issuing antidumping orders and imposing duties on those foreign competitors' sales of ferrosilicon in the United States," by filing antidumping petitions in 1992 (against certain countries) and 1993 (against Brazil and Egypt) (*id.* ¶ 16); and (3) although neither Elkem Defendant was a petitioner, Elkem Metals participated in the decision to file, and helped to defray the costs of filing, the petition (*id.* ¶6).

More specifically, the complaints allege that the allegedly conspiratorial conduct occurred in connection with meetings and other communications among the defendants relating to the filing of the antidumping petitions.[15] The ITC rendered its determination on the petition regarding imports from Brazil in 1994, and the DOC imposed an antidumping duty on ferrosilicon imported from Brazil in February 1994. (*Id.* ¶ 27.)

In 1998, plaintiffs and other Brazilian ferrosilicon producers requested that the ITC review and rescind its determinations regarding the antidumping duties imposed on ferrosilicon imported from Brazil. ((ITC Reconsideration (attached to the Complaints as Ex. A), at 1-2.) After the ITC granted that request and entered its determination rescinding the antidumping duties, Elkem Metals and others filed a complaint with the United States Court of International Trade with regard to the ITC's determination. (Compl. ¶ 55u.)

A review of the duties was commenced by the ITC in 1998, and in August 1999 the ITC reversed its earlier ferrosilicon determination and the duties were lifted. (*Id.* ¶¶ 34, 37.) In the decision reversing the earlier determination, the ITC stated that "the domestic industry based its arguments [in support of its antidumping petitions] and grounds for relief from subject imports

---

[15] Specifically, plaintiffs allege that "conspiratorial meetings regarding the filing of an antidumping petition for ferrosilicon" took place in September 1989 in Pittsburgh, and that other communications, allegedly part of that conspiracy, occurred in 1990, 1991 and 1992. (Compl. ¶¶ 55 a-e; *see* Affidavit of Francis King ("King Aff."), attached as Exhibit D, correctly identifying date on which 1991 meeting took place.)  The complaints also allege that Elkem Metals submitted a completed producer's questionnaire to the ITC in December 1992, also allegedly as part of the same conspiracy. (*Id.* ¶55(m)).  Notably, the questionnaire responses allegedly submitted by Elkem related to ferrosilicon imports *from China*. (*Id.* ¶ 55(m).)

on data covering the period when there was an active price-fixing conspiracy in the ferrosilicon

market" and that the "same industry individuals personally participated in or were

knowledgeable of the conspiracy and provided information to the Commission that was

inaccurate and misleading." (Compl., Ex. A. at 12-13.) According to the ITC, through the

petitions, "the industry represented that the ferrosilicon market was competitive and price

sensitive during the period covered by the conspiracy," which created "the impression that the

domestic industry was competing in the market and responding to market forces in setting prices

and obtaining sales when in fact the industry was actively collaborating in an attempt to restrain

competition in order to set artificially high prices." (*Id.* at 14.)

The Antitrust Division of the United States Department of Justice had begun an

investigation in 1993 for alleged price fixing in the sale of, among other things, ferrosilicon. (*Id.*

¶ 26.) On September 22, 1995, Elkem Metals pleaded guilty to one count of conspiracy to fix

prices of ferrosilicon in the United States from late 1989 until mid-1991.[16] (*Id.* ¶ 27.) That

guilty plea was a matter of public record. (*See In re Industrial Silicon Antitrust Litig.*, Master

File No. 95-2104, filed Dec. 29, 1995, W. Dist. of Pennsylvania; *United States v. SKW Metals &*

*Alloys* (Docket Nos. 98-1090(L), 98-1091(CON), 98-1139(XAP), W. Dist. of New York).

The picture drawn by the Complaints and the attachments to them is one of activity that

well proceeds the statutory period for filing a complaint. CBCC filed its Complaint on March 26,

2001. Minasligas, et al., filed their Complaint on December 28, 2001. To fit within the four-

year statutory period, these plaintiffs would have to allege injury that arose no earlier than March

---

[16] A strikingly similar and timely lawsuit was filed *in 1995* against these same Defendants, for the very same acts alleged here, but as to a similar product. *See Midland Export, Ltd. v. Elkem Holdings, Inc.*, 947 F. Supp. 163 (E.D. Pa. 1996), *aff'd*, 3d Cir. (*not reported*), *cert. denied*, 523 U.S. 1119 (1997) (dismissing antitrust complaint of imported silicon metal sellers against domestic producers, importer/exporters, marketers/distributors, and competitors, claiming that deliberate price fixing caused International Trade Commission (ITC) to impose antidumping duties on seller). The initial treble damage case, a class action, against Elkem and other of the defendants named in the instant suit, was *In re Industrial Silicon Antitrust Litigation*, Master File No. 95-2104, filed in the Western District of Pennsylvania on December 29, 1995.

26, 1997 and December 28, 1997. Because they allege injuries well before these dates, their Complaints are time-barred.

C. **Plaintiffs' Antitrust Claims Are Time-Barred**

Plaintiffs' antitrust claims are subject to a four-year statute of limitations. "Federal law requires that any action to enforce any cause of action under [the Sherman or Clayton Antitrust Acts] shall be forever barred unless commenced within four years after the cause of action has accrued." *Relafen*, 286 F.Supp. 2d 56 (D. Mass. 2003), citing 15 U.S.C. § 15b (2000) (emphasis in original). A cause of action accrues and the statute begins to run "when a defendant commits an act that injures a Plaintiffs' business." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971). Construing the allegations of the Complaints in the light most favorable to plaintiffs, plaintiffs' business (the production of ferrosilicon) first suffered the alleged injury when the antidumping duty was imposed by the ITC—in 1994. According to plaintiffs, Elkem Metals committed its first act injuring plaintiffs' business in 1989, with the alleged formation of a conspiracy with other defendants. Thus, plaintiffs' antitrust claims accrued in 1994 at the latest, and absent tolling, are time-barred.

To the extent that plaintiffs may seek to have this Court apply the doctrine of equitable tolling, there is no variant of this theory that can render plaintiffs' antitrust claims timely. Under federal antitrust laws, the statute of limitations may be tolled if a plaintiff can show that defendants are guilty of "fraudulent concealment" of the alleged conspiracy. *In re Vitamins Antitrust Litigation*, 2000 WL 1475705 (D.D.C. May 9, 2000). In order to prevail on a claim of fraudulent concealment, however, a plaintiff must plead with sufficient particularity (1) that the defendants engaged in a course of conduct designed to conceal evidence of their alleged wrongdoing and that (2) the plaintiffs were not on actual or constructive notice of that evidence, despite (3) their exercise of due diligence. *Id.* (citing *Larson v. Northop Corp.*, 21 F.3d 1164,

1172 (D.C. Cir. 1994). The standard of due diligence is an objective one, based upon the knowledge that would put a reasonable person on notice to inquire. *Id.* at *4 ("[T]he test…is whether a reasonable person exercising due diligence would have discovered the claims earlier," and "the concealment requirement is satisfied only if the plaintiff shows that he neither knew, nor, in the exercise of due diligence, could reasonably have known of the offense.").

In *In re Molecular Diagnostics Labs. v. Hoffman-LaRoche Inc.*, 402 F. Supp. 2d 276 (D.D.C. 2005), purchasers of drugs brought a Sherman Act suit, alleging supra-competitive pricing based on allegedly unlawful market domination. *Id.* The court held that the defendants' alleged fraudulent concealment of misconduct underlying a patent application ended upon the initial judicial determination (rather than the ultimate resolution by a court of appeals, as plaintiffs argued) finding such misconduct. Accordingly, fraudulent concealment did not toll the limitations period because the plaintiffs were on notice of their potential claims. 402 F. Supp. 2d at 284-85. *Cf. Vitamins*, 2000 WL 1475705 (finding plaintiffs had sufficiently alleged that defendants were actively seeking to conceal evidence of wrongdoing and therefore that the plaintiffs could not, in the exercise of reasonable diligence, have discovered this evidence).

It is clear from the face of plaintiffs' Complaints that there was no concealment here. From 1995 onward, Elkem Metals' guilty plea was a matter of public record. Indeed, other plaintiffs—making strikingly similar claims—did file timely, albeit unsuccessfully, a similar lawsuit. *Midland Export, Ltd. v. Elkem Holdings, Inc.*, 947 F. Supp. 163 (E.D. Pa. 1996), *aff'd*, 3d Cir. (unreported), *cert. denied*, 523 U.S. 1119 (1997) (dismissing for lack of standing antitrust complaint filed by sellers of imported silicon metal against domestic producers, importer/exporters, marketers and distributors, and direct competitors, claiming that alleged deliberate price fixing caused to impose antidumping duties on seller). In addition, some of the same counsel representing CBCC and Minasligas, et al., in this litigation also represented

plaintiffs in the class action litigation (at Section II.B., *supra*), which was filed against the Elkem Defendants and others in the Western District of Pennsylvania in 1995, seeking damages on behalf of direct purchasers allegedly resulting from the same conspiracy. Indeed, as reflected on the face of their Complaints, "concealment" of the alleged conspiracy not only could not have occurred, but in any event was a matter of public record by no later than September 1995.

Plaintiffs do not allege that Elkem Metals actively sought to conceal the alleged conspiracy from disclosure—nor, indeed, could defendants have done anything to prevent Plaintiffs from discovering this information, had they desired to do so. Moreover, the fact that Elkem Metals' subsequent filings with the CIT were filed in *response* to *plaintiffs'* own request that the ITC review its determination is, in and of itself, evidence that plaintiffs were aware of the alleged price-fixing conspiracy and Elkem Metals' guilty plea. Complaint ¶ 28.[17] These subsequent filings could not constitute active concealment of anything that plaintiffs could not have discovered – and clearly did discovery – much earlier.

According to the allegations in the Complaints, the alleged price-fixing conspiracy began in 1989, plaintiffs suffered the alleged "injury" beginning in 1994, and plaintiffs were on constructive – if not actual – notice of these matters in 1995 at the latest. Thus, because plaintiffs failed to exercise due diligence to discover their claims, the fraudulent concealment doctrine cannot salvage plaintiffs' antitrust claims. *See also Stegeman v Aetna Ins. Co.*, 1980 WL 1815, 1980-1 CCH Trade Cases ¶ 63256, (E.D. Mich. 1980) (granting summary judgment for defendants in an antitrust action on statute-of-limitation grounds, rejecting contention that limitations period had been tolled by fraudulent concealment, because plaintiffs had knowledge of operative facts relating to alleged conspiracy within limitations period).Just as the fraudulent

---

[17] Although plaintiffs allege that Elkem Metals filed a complaint with the United States Court of International Trade in 1999 to reinstate the original Commission determinations (Compl. ¶ 56(u)), the conduct upon which plaintiffs' theory of liability rests had long been of public record, by way of Elkem Metals' September 1995 guilty plea.

concealment doctrine is inapplicable, so too is the so-called "continuing tort" rule unavailing to plaintiffs. A continuing tort requires "(1) a continuous and repetitious wrong, (2) with damages flowing from the act as a whole rather than from each individual act, and (3) at least one injurious act within the limitation period." *Beard v. Edmondson & Gallagher*, 790 A.2d 541, 547-48 (D.C. 2002).[18]

Taking plaintiffs' allegations as true, it could be argued that the consequences of the alleged conspiracy -- the antidumping duties -- were in force after the initial act causing plaintiffs' alleged injury (commencement of the alleged conspiracy or the 1993 filing of the petition). The continuing tort rule, however, does not apply when defendants have taken no additional affirmative actions to harm the plaintiffs. Such affirmative actions do **not** include continuing to litigate a lawsuit already in existence, and therefore any additional filings in defense of the imposition of the antidumping duties would not render the continuing tort rule applicable. *In re Molecular Diagnostics Labs.*, 402 F.Supp.2d at 285 (noting that "continuing to litigate a sham law suit does not constitute a 'continuing violation' of the antitrust laws").

Similarly, the fact that the antidumping duty was in place beyond the filing of the petition in 1993 is not evidence of a continuing tort; rather, the continuing imposition of the duty represents continuing **damages**, if anything, but not a continuing tort. *Daboub v. Gibbons*, 42 F.3d 285, 290-91 (5th Cir. 1995) (continued sales of and profits from alleged wrongful copyright "elucidates a concept of continuing damages, rather than a continuing tort"[19]); *see also General Aircraft Corp. v. Air America, Inc.*, 482 F. Supp. 3 (D.D.C. 1979) (antitrust action brought by

---

[18] The continuing tort rule holds that "although the initial tortious act may have occurred longer than the statutory period prior to the filing of an action, an action will not be barred if it can be based upon the continuance of the tort within the statutory period." *See In re Molecular Diagnostics Labs.*, 402 F. Supp. 2d 276.

[19] The court rejected "[t]he Nightcaps' continuing tort argument ... [which was] based on an expansive reading of the alleged tortious activity. The Nightcaps claim that each time ZZ Top sold an album containing Thunderbird, or performed the song, and every time the song was broadcast, ZZ Top took another step in its tortious behavior. The Nightcaps claim that music, unlike tangible property, can be converted over and over again."

aircraft corporation against various corporations formerly connected with CIA, alleging conspiracy to restrain trade in domestic and foreign markets for certain aircraft; court held that cause of action accrued once contracts were awarded to competitors, as provable damages were incurred then; claims for such damages were barred by four-year statute of limitations).

D. **Plaintiffs' RICO Claims Are Time-Barred**

The same standard applies to claims under the RICO statute, namely, the statute of limitations begins to run "when a defendant commits an act that injures a plaintiff's business." *Rotella v. Wood*, 528 U.S. 549 (2000) (citing *Zenith Radio Corp. v. Hazeltine Res., Inc.*, 401 U.S. at 338). In *Rotella*, the Court held that a patient's civil RICO action (in which he alleged that physicians and business entities improperly conspired to detain him at a psychiatric facility) accrued when he received inadequate treatment, rather than when he discovered the alleged pattern of racketeering activity (that the facility's parent company and director had pleaded guilty to criminal fraud charges by way of improper relationships and illegal agreements between the company and its physicians). Accrual of the claim was not delayed until after the plaintiff realized his treatment was allegedly a part of a pattern of racketeering activity, and thus, his claim was time-barred.[20]

Applying the principles of *Rotella*, it is evident that plaintiffs' claims accrued when the antidumping duty was imposed—1993—or, at the very latest, when Elkem Metals entered its

---

[20] Moreover, no discovery rule is applicable to save plaintiffs' RICO claims. *See Daboub*, 42 F.3d at 290-91. In *Daboub*, which involved a RICO claim based on alleged copyright infringement, the plaintiffs argued that the discovery rule should toll the statute of limitations. The court made the following observation:

> Several [Plaintiffs] members of the Nightcaps admitted that they knew about ZZ Top's version of *Thunderbird* in 1981. ZZ Top's actions were not covert or concealed. Indeed, many copies of *Fandango!* were released and ZZ Top performed the song publicly. The Nightcaps either knew, or through reasonable diligence should have known, about ZZ Top's actions more than four years before they brought this suit in 1992. Therefore, even if the Nightcaps causes of action survived the preemption provision of the Copyright Act, they were extinguished by the limitations period.

guilty plea—1995.[21]   Thus, at the very latest, plaintiffs should have filed their RICO claims in

1999, if not earlier.

### E. Plaintiffs' Common Law Claims Also Are Barred by Applicable Statutes of Limitations

#### (1) Plaintiffs' Fraud Claims Are Time-barred

In this case, the statute of limitations for common law fraud is three years. *See* D.C.

Code § 12-301(8).[22]   According to plaintiffs' Complaints, plaintiffs were first put on notice of

Elkem Metals' alleged fraudulent completion of questionnaires in support of the ITC petitions in

1995, at the time of Elkem Metals' guilty plea.  Plaintiffs' claim for fraud, therefore, accrued in

1995, is untimely, and should be dismissed. *See Richards v. Duke Univ.*, 480 F. Supp. 2d 222

(D.D.C. 2007) (barring former law student's claims of fraud about anonymous grading system

and law school exams, finding claim accrued, and three-year limitations period began to run,

while student was enrolled at law schools because student had knowledge of the alleged fraud

before graduation).

#### (2) Plaintiffs' Abuse of Process Claims Are Time-barred

The D.C. Code contains no specific limitations provision for abuse of process claims, and

the District of Columbia Court of Appeals has never decided whether its similarity to malicious

prosecution brings it within the one-year period applicable to malicious prosecution or whether it

instead falls within a three-year catch-all limitations period. *See* D.C. CODE § 12-301(8).  Even

assuming a limitations period of three years applies, plaintiffs' claims are again time-barred.

---

[21] Even had there been an affirmative act of fraudulent concealment, the running of the statute of limitations will not be tolled if the defendant can establish that the cause of action could have been discovered if the plaintiffs had exercised reasonable diligence. *Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1491 (D.C. Cir. 1989) (noting that affirmative actions could include creating false invoices, two sets of books, or by simply lying in order to prevent discovery of the cause of action).  Because of Elkem Metals' guilty plea in 1995, plaintiffs knew or should have known of their claims in the exercise of reasonable diligence.

[22] As to matters of procedure, including the statute of limitations, District of Columbia law should apply. *Williams v. Central Money Co.*, 974 F. Supp. 22 (D.D.C. 1997) ("The parties agreed that D.C. law applied to matters of procedure, such as the statute of limitations.")

For abuse of process, the limitations period runs from the date on which the allegedly abusive process last issues. *Nader v. Democratic Nat'l Comm.*, 567 F.3d 692 (D.C. Cir. 2009). Here, even assuming that the filing of the petitions by some defendants can be construed as "process" as against plaintiffs (as opposed to importers of ferrosilicon from Brazil), plaintiffs' claims expired, at the latest, in 1996, three years after the petition was filed. Accordingly, plaintiffs' claims for abuse of process should be dismissed.

### (3) **Plaintiffs' Malicious Prosecution Claims Are Time-barred**

A one-year statute of limitations applies to malicious prosecution claims. *See* D.C. CODE § 12-301(4). That limitations period ordinarily runs from the date on which the underlying action terminated in the defendant's favor. *Nader*, 567 F.3d 692. Here, even assuming that there was any "underlying action" against plaintiffs (which there was not, as the petition pertained generally to ferrosilicon imports from Brazil and was not specific to plaintiffs), the action was terminated "in favor" of plaintiffs in August 1999, when the ITC reversed its earlier decision to impose duties. Thus, at the very latest, plaintiffs' claims for malicious prosecution expired in August 2000. *Nader*, 567 F.3d 692.

## III. PLAINTIFFS' ANTITRUST, RICO AND FRAUD CLAIMS (COUNTS I THROUGH IV) SHOULD BE DISMISSED FOR LACK OF STANDING, BECAUSE PLAINTIFFS HAVE FAILED TO ALLEGE ANTITRUST OR OTHER INJURY THAT CAN BE ATTRIBUTED TO THE ALLEGED ACTIONS OF THE ELKEM DEFENDANTS

As set forth above, plaintiffs' claims are time-barred, and plaintiffs have not established that this Court has jurisdiction over either Elkem Defendant. Even assuming, *arguendo*, that this Court could exercise jurisdiction over these untimely claims, the plaintiffs lack standing to sue for their antitrust, RICO, and fraud claims, and Counts I through IV of the Complaint should be dismissed.

### A. **Legal Standard**

"[On] a motion to dismiss pursuant to Rule 12(b)(1), the Plaintiff bears the burden of

persuasion to establish subject-matter jurisdiction by a preponderance of the evidence."

*Thompson v. Capitol Police Bd.*, 120 F. Supp. 2d 78, 81 (D.D.C. 2000).  In reviewing a motion

to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the court must accept the

complaint's well-pled factual allegations as true and draw all reasonable inferences in the

plaintiff's favor." *Id.* at 81.  "The court is not required, however, to accept inferences

unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Rann v.*

*Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001).  Moreover, the court need not limit itself to the

allegations in the complaints, but may consider such materials outside the pleadings as it deems

appropriate to resolve the question whether it has jurisdiction.  *Id.*

Plaintiffs must satisfy three elements to meet the constitutional requirements for standing.

First, they must demonstrate that they have suffered an "injury in fact,"—*i.e.*, an invasion of a

legally-protected interest that is "concrete and particularized" and "actual or imminent," not

"conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal

quotations and citations omitted).  Second, they must establish "a causal connection between the

injury and the conduct complained of—the injury has to be 'fairly trace[able] to the challenged

action of the defendant, and ***not . . . th[e] result [of] . . . some third party not before the court.*"

*Id.* at 560 (emphasis added) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42

(1976)).[23]  Third, they must show a substantial likelihood that the requested relief will be

redressed by a favorable decision; mere speculation is not enough.  *Id.*; *Sierra Club v. EPA*, 292

F.3d 895 (D.C. Cir. 2002).  Construing plaintiffs' allegations in the light most favorable to them,

---

[23] *See also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (holding that injury is a prerequisite to
establishing standing); *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) (noting that proximate cause
between the predicate acts and the injury is required in a civil RICO claim); *Anza v. Ideal Steel Supply Corp.*, 547
U.S. 451, 457 (2006) (reaffirming *Holmes*).

it is clear that they lack standing to assert their antitrust, RICO, and fraud claims, and that Counts

I through IV of plaintiffs' Complaints should be dismissed.

### B. Plaintiffs Lack Antitrust Standing.

Antitrust standing is distinct from constitutional standing, in which a mere showing of

harm in fact will establish the necessary injury. *Port Dock & Stone Corp. v. Oldcastle*

*Northeast, Inc.*, 507 F.3d 117 (2d Cir. 2007). Not only does antitrust standing require "an injury

in fact to [the plaintiff's] business or property caused by the antitrust violation," but it also

requires that the plaintiff have suffered "a special kind of 'antitrust injury,'" and that "the

plaintiff is an 'efficient enforcer' to assert a private antitrust claim." *Id.*; *see also Ass'n of Wash.*

*Pub. Hosp. Dists. v. Philip Morris, Inc.*, 241 F.3d 696 (D.C. Cir. 2001) ("the Supreme Court has

insisted on an appropriate plaintiff, namely, a plaintiff whose alleged injury possesses a

sufficiently direct causal relationship to the alleged wrongdoing," citing *Associated Gen.*

*Contractors v. Cal State Council of Carpenters*, 459 U.S. at 533-35 (1983); and *Holmes*, 503

U.S. at 268-70).

Antitrust standing is one important limitation on the broad language of the Clayton Act,

and under this doctrine, courts must make a threshold determination that the plaintiff is a proper

party to bring a private antitrust action.[24] In essence, there must be "proximate cause to

determine whether a particular injury is too far removed from an alleged violation to warrant a

Clayton Act section 4 remedy." *Associated Gen. Contractors*, 459 U.S. at 535-36. The lower

---

[24] Section 4 of the Clayton Act provides that any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may bring a private damages suit. 15 U.S.C.S. § 15. Similarly, 18 U.S.C.S. § 1964(c) provides that any person injured in his business or property by reason of a violation of 18 U.S.C.S. § 1962, the substantive provisions of the Racketeer Influenced Corrupt Organizations Act (RICO), may bring a private damages suit. § 1964(c). Nonetheless, the courts have recognized that private antitrust and RICO actions are subject to traditional judicial tools to limit a person's responsibility for the consequences of that person's own acts. Among these limitations is the requirement that the alleged violations of the law be the proximate cause of the injury suffered. *Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris, Inc.*, 241 F.3d 696 (D.C. Cir. 2001) (dismissing hospital district's RICO and antitrust claims, as well as common law claims where payment of costs for smoking illnesses was derivative of the injury to smokers due to antitrust violations).

courts have been "virtually unanimous in concluding that Congress did not intend the antitrust

laws to provide a remedy in damages for all injuries that might conceivably be traced to an

antitrust violation." *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 263 n.14 (1972).

### (1) **Plaintiff Has Not Suffered an Antitrust Injury.**

Actionable "antitrust injury" is an injury of the type the antitrust laws were intended to

prevent and that flows from that which makes defendants' acts unlawful.  Injury, even if causally

related to an antitrust violation, will not qualify unless it is attributable to an anticompetitive

aspect of the practice under scrutiny, since it is inimical to the antitrust laws to award damages

for losses stemming from continued competition.  *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479

U.S. 104, 109-110 (1986); *see also Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006), *cert. denied*,

549 U.S. 1209 (2007) (antitrust standing requires a private plaintiff to show a direct causal

connection between the antitrust injury complained of and violation of the antitrust laws).

Where a competitor's losses do not flow from the harmful effects on dealers and

consumers that render price fixing per se illegal, that competitor has not suffered "antitrust

injury." *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990).  Here, the alleged

injury (the antidumping duty) does not flow directly from Elkem Metals' alleged anticompetitive

conduct—its alleged participation in a price-fixing conspiracy.  Rather, the alleged injury flows

from the independent, discretionary nature of the ITC's decision to impose an antidumping duty

on imports from Brazil.[25]

---

[25] Pursuant to 19 U.S.C. § 1337, the ITC is authorized to investigate any alleged violation of a provision of the Tariff Act of 1930 setting forth unfair methods of competition and unfair acts in the importation of articles.  *Meditech Intern. Co. v. Minigrip, Inc.*, 648 F. Supp. 1488 (N.D. Ill. 1986).  To enable it to carry out its duties in connection with investigations authorized by law, the ITC was granted the right to summon witnesses, to take testimony, and to require the production of documents and other evidence pertaining to a pending investigation.  *Sealed Air Corp. v. U. S. Intern. Trade Commission*, 645 F.2d 976 (1981).  The ITC has broad discretion in the choice of its methodology in determining whether all or almost all of the production within a regional market suffered a material injury under a statute providing that material injury to an industry by reason of imports or sales at less than the fair value.  *Cemex, S.A. v. U.S.*, 790 F. Supp. 290 (CIT 1992), *decision aff'd*, 989 F.2d 1202 (Fed. Cir. 1993).

In *Midland Export, Ltd. v. Elkem Holdings, Inc.*, 947 F. Supp. 163 (E.D. Pa. 1996), *aff'd*,

3d Cir. (not reported), *cert. denied*, 523 U.S. 1119 (1997), the District Court for the Eastern

District of Pennsylvania addressed this issue precisely.  The plaintiffs in *Midland Export* had

alleged that the Elkem Defendants and others "deliberately engaged in price fixing with the

purpose of causing antidumping duties to be imposed on Plaintiffs." *Id.* at 164.  Even accepting

this allegation as true, however, the court granted the defendants' Rule 12(b)(6) motion, stating:

> [Plaintiffs] suffered economic loss because the ITC imposed a tariff on silicon metal
> imported from China after its independent determination that this measure was necessary
> to prevent further material injury to the domestic market. Even though the ITC reached this
> conclusion allegedly in reliance on market information distorted by Defendants'
> conspiracy (taking all of [Plaintiffs'] allegations as true, as we must), the **ITC's action was
> still the direct cause of the harm alleged here**. Defendants' conspiracy, even if a
> significant influence on the ITC's determination, was nonetheless an indirect cause of
> [Plaintiffs'] harm.

*Id.* at 166 (emphasis added).  Just as with plaintiffs' allegations here, the "attenuated causal

connection between the anticompetitive practices alleged and the harm that ultimately befell

[Plaintiffs]" was insufficiently direct to impose liability on the defendants. *Id.* at 166.[26]

### (2) **Potential for duplicative recovery.**

Moreover, there is a manifest potential for duplicative recovery should plaintiffs' action

be permitted to proceed—and, in turn, duplicative penalties incurred by defendants, including the

Elkem Defendants.  Where, as here, Elkem Metals has settled private treble-damage claims of

direct purchasers of ferrosilicon, to permit plaintiffs' claims to proceed effectively subjects

Elkem Metals to damages for the same conduct for which it has paid.  Even if plaintiffs have

---

[26] *See also Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris, Inc.*, 241 F.3d 696 (dismissing complaint of public
hospital districts and their association against a number of tobacco companies and industry organization, where
claims made for recovery of unreimbursed costs for treating patients suffering from tobacco-related illnesses).  The
*Ass'n of Wash.* court held that plaintiffs lacked standing to bring antitrust and RICO claims against defendants
because their attempt to recover damages was derivative of the injuries suffered by smokers. No direct link existed
between the alleged misconduct of defendants and plaintiffs' damages, and a potential for duplicative recovery was
present. Plaintiff had also failed to allege an antitrust claim because their injuries were not experienced in the
nicotine delivery market, but rather in the health care market. The mere fact that plaintiffs paid the smoking-related
medical expenses did not transform such expenses into business or property harm that was recoverable under
Washington's Consumer Protection Act. Again, because defendants' unlawful conduct was not the proximate cause
of plaintiffs' injuries, their other state law claims were likewise doomed.

been harmed as alleged, it is inequitable to impose their speculative harm on a party who has

made its reparations already. The Supreme Court has held that the serious risk that a defendant

would have multiple damage liability to a direct purchaser and many other indirect purchasers—

accompanied by the pass-on issues and complicated computations that would be necessitated by

permitting such claims—were practical considerations that precluded maintenance of such a

claim. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) (denying antitrust standing to sub-

customers suing the same wrongdoer for damages for the amount of any passed-on overcharge

due to antitrust violation by wrongdoer).

   In short, even if all allegations in the Complaints are taken as true, plaintiffs here have

only alleged an injury that is not directly caused by the alleged conduct of the Elkem Defendants,

and therefore is insufficient to warrant the imposition of liability on these defendants.

Accordingly, plaintiffs' antitrust claims must be dismissed for want of standing.

## C. **Plaintiffs Lack Standing to Assert Their Claims Under RICO.**

   Because the plaintiffs' alleged injury is not a direct result of any conduct on the part of

the defendants sufficient to establish proximate cause, the plaintiffs lack standing to assert their

RICO claims. Plaintiffs make various allegations pertaining to defendants' meetings in

furtherance of the petitions to the ITC, all allegedly with the objective of foreclosing plaintiffs'

participation in the United States ferrosilicon market. As a result of these petitions, the plaintiffs

conclusorily allege that they have sustained "injury and financial damages to its business or

property as a direct and proximate result of defendants' violations of 18 USC § 1962(c) because

the issuance of antidumping orders and the resultant duties imposed by the Government as a

result of defendants' scheme effectively foreclosed plaintiff from selling ferrosilicon in the

United States market." (Compl. ¶¶ 59, 64.) However, this purported harm is not alleged to be

the direct result of any alleged conduct of the defendants, and thus does not impart standing to the plaintiffs.

"A showing of standing is an essential and unchanging predicate to any exercise of a court's jurisdiction." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). For a plaintiff to have standing, he must demonstrate that a defendant's predicate acts were the proximate cause of his injury. *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) (noting that proximate cause between the predicate acts and the injury is required in a civil RICO claim); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) (reaffirming *Holmes*).

"The RICO pattern or acts proximately cause a plaintiff's injury if they are a substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence." *Lopez v. Council on American-Islamic Relations Action Network, Inc.*, 2009 WL 3069661 (D.D.C. Sept. 28, 2009) (citations omitted). In other words, the "Supreme Court has imported the general common law requirement of proximate cause" and the "specific requirement that plaintiff's injury must not be *remote and indirect* into lawsuits brought under the RICO ... statute[]." *In re Tobacco/Governmental Health Care Costs Litig.*, 83 F. Supp. 2d 125, 129 n.2 (D.D.C. 1999) (emphasis added) (citing *Holmes*, 503 U.S. at 268; *Associated Gen. Contractors*, 459 U.S. at 536). Under the doctrine of remoteness, a plaintiff who complains of harm "flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand at too remote a distance to recover." *Holmes*, 503 U.S. at 268-69 (1992). The doctrine of remoteness is a component of proximate cause, which in turn embraces the concept that "the judicial remedy cannot encompass every conceivable harm that can be traced to alleged wrongdoing." *Associated Gen. Contractors*, 459 U.S. at 536.

Plaintiffs' RICO claims fail under the doctrine of remoteness. Here, the plaintiffs allege harm flowing from the "misfortunes visited upon" the ITC by defendants' allegedly misleading petitions—to which neither Elkem AS nor Elkem Metals was a party—and/or questionnaire responses. Notably, however, any such "harm" resulting from this conduct was not ultimately suffered by the plaintiffs here, but the consumer. Plaintiffs' "injury", such that it is, is clearly far too attenuated from any alleged conduct of the defendants to demonstrate standing under RICO. Indeed, it is the actions of the ITC that are most directly tied to any injury that plaintiffs may have suffered. Accordingly, plaintiffs lack standing to make their RICO claim and Counts II and III of the Complaints must be dismissed.

### D. **Plaintiffs Lack Standing to Assert Their Claim for Common Law Fraud**

Plaintiffs' allegations of fraud consist of conduct allegedly directed solely to *the ITC*. (Compl. ¶¶ 66-69 ("false and misleading statements and omissions made by defendants and their coconspirators to the ITC were designed to induce and were a material factor in the government's decision to impose duties . . .").) Plaintiffs do not allege that *they* relied on any false statements made by either Elkem Defendant, or indeed by any other Defendant. Presumably, plaintiffs seek compensation for fraud purportedly worked on the ITC. Plaintiffs cannot do so.

Under District of Columbia law,[27] a fraud claim must satisfy each of the requisite elements, namely, (1) a false representation; (2) made in reference to a material fact; (3) with

---

[27] Under the choice of law rules of this District, the place where the defendants allegedly made their false representations to the plaintiffs (or, in this case, to the ITC) is given the greatest weight in determining what jurisdiction's law governs. *See, e.g., Nelson v. Nationwide Mortg. Corp.*, 659 F.Supp. 611 (D.D.C. 1987); RESTATEMENT (SECOND) OF CONFLICT OF LAW § 146 cmt. d (1971) ("The state where the defendant's conduct occurs has the dominant interest in regulating it and in determining whether it is tortious in character.").

knowledge of its falsity; (4) with the intent to deceive; (5) resulting in detrimental ***reliance by the plaintiff***. *Antoine v. U.S. Bank Nat. Ass'n*, 547 F. Supp. 2d 30 (D.D.C. 2008) (emphasis added); *see also 3D Global Sol'ns, Inc. v. MVM, Inc.*, 552 F. Supp. 2d 1 (D.D.C. 2008).

Here, the only actions allegedly taken in reliance on defendants' alleged representations were *actions taken by the ITC*, not plaintiffs. Indeed, far from relying on any such alleged conduct, plaintiffs actively opposed it. Plaintiffs have not alleged, and cannot establish, the "concrete and particularized," and/or the "actual or imminent" harm needed to satisfy the requirements of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The so-called "injury" here is that of the ITC—not plaintiffs—and plaintiffs are not the proper party to bring this claim for fraud before this Court.

Thus, even if taken to be true, plaintiffs' Complaints allege no facts to show fraudulent conduct directed at the plaintiffs, and accordingly, plaintiffs have failed to state a claim for fraud and those claims should be dismissed.

## IV. COUNTS II THROUGH VI OF PLAINTIFFS' COMPLAINTS FAIL TO STATE COGNIZABLE CLAIMS UPON WHICH RELIEF CAN BE GRANTED AND MUST BE DISMISSED

### A. Plaintiffs Have Failed To State A Claim under RICO as There Is No "Pattern" Of Racketeering Activity Alleged In The Complaint

In order to state a cognizable claim under the RICO statute, a plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Western Assocs. Ltd., ex rel. Ave. Assocs. Ltd. v. Mkt. Square Assocs.*, 235 F.3d 629, 631 (D.C. Cir. 2001).

---

Furthermore, where, as here, the injury allegedly occurred in multiple locations (based on the locations from which defendants submitted the allegedly misleading questionnaire responses and petitions), when the injury arises out of decisions made by persons located within the District, it has been held that this District has the greatest interest in application of its laws to common law claims. *Tri-State Hosp. Supply Corp. v. United States*, 2007 WL 2007587 (D.D.C. July 6, 2007) (where "the injury [wrongful actions by customs officials against supply company] could be said to have occurred in multiple locations, the primary actions causing the alleged injury are an outgrowth of decisions made by persons located within the District of Columbia.... Finally, because this case is premised upon the actions of Customs officials, it would appear that the District of Columbia – the home of the Customs Service – would have as great, if not a greater, interest than Michigan in applying its law to Tri-State's claims.").

Plaintiffs' RICO claims fail because they do not allege a sufficient "pattern" of activity, which requires a showing of "the elements of relatedness and continuity."[28]  *Id.*  Moreover, as held in *Prunte v. Universal Music Group*, 484 F. Supp. 2d 32, 42 (D.D.C. 2007), Fed.R.Civ.P. 9(b) sets a heightened pleading standard for civil RICO claims, which plaintiffs have not satisfied.

In order to state a valid RICO claim, a plaintiff must plead sufficient facts indicating that the defendant engaged in a "pattern" of racketeering activity.  To constitute a "pattern," there must be at least two acts of racketeering activity that occur within ten years of each other.  18 U.S.C. § 1961(5).  A plaintiff must also allege a "relationship" between the predicate acts as well as a "threat of continuing activity" to plead a pattern of racketeering activity.  *H.J. Inc. v. NW. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).  The relationship requirement demands acts that "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."  *Id.*  The continuity element requires that the "predicates themselves amount to, or . . . otherwise constitute a threat of, *continuing* racketeering activity."  *Id.* (emphasis in original).

In deciding whether a pattern of racketeering activity has been established, a court should consider the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity; this is not a rigid test, but rather presents a flexible guide for analyzing RICO allegations on a case by case basis.  18 U.S.C. § 1961(5).

It is well-settled that a single scheme is insufficient:  where "Plaintiffs allege only a single scheme, a single injury, and few victims it is 'virtually impossible for plaintiffs to state a

---

[28] In addition, it is questionable whether plaintiffs' allegations are sufficient to establish proximate cause.  A RICO pattern or acts proximately cause a plaintiffs' injury if they are a substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence.  *Elemary v. Philipp Hotzmann A.G.*, 533 F. Supp. 2d 116, 140 (D.D.C. 2008).  Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts.  *Sedima*, 473 U.S. at 497.  The harm must be concrete and actual or imminent, not conjectural or hypothetical.  *Byrd v. Envtl. Prot. Agency*, 174 F.3d 239, 243 (D.C. Cir. 1999).

RICO claim' " for failure to meet the pattern of racketeering requirement. *Western Assocs.*, 235 F.3d at 634 (quoting *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995)); *Ellipso, Inc. v. Mann*, 541 F. Supp. 2d 365 (D.D.C. 2008) (granting summary judgment dismissing RICO claim, finding that multiple false statements transmitted by telephone, fax, email were "best characterized as a single effort to deceive Ellipso regarding the $90,000 loan" and insufficient to constitute a pattern of racketeering activity).

Notably, courts must particularly scrutinize RICO claims based on mail or wire fraud, and the "pattern" requirement helps "prevent ordinary business disputes from becoming viable RICO claims." *Western Assocs.*, 235 F.3d at 636-37 (where limited partnership sued general partnership under RICO, alleging that general partner misrepresented expected costs and profits in connection with real estate development project, dismissal of action pursuant to Rule 12(b)(6) was affirmed, where alleged conduct of general partner, consisting of four separate schemes to conceal cost overruns, shift costs, conceal impact of budget overruns, and conceal debt, did not constitute "pattern of racketeering activity" under RICO; conduct was more accurately characterized as one effort to diminish value of limited partner's interest in project, all four alleged schemes involved contested bookkeeping entries, and alleged schemes resulted in one single harm).

Here, at best, plaintiffs' allegations constitute a single alleged scheme akin to the dismissed RICO claims in *Western Associates*. Defendants' involvement in the alleged price-fixing conspiracy and subsequent antidumping petition, even if true as alleged, would constitute only one scheme to restrict price competition in the ferrosilicon market. Plaintiffs have not alleged a "pattern" of racketeering activity. Accordingly, plaintiffs' RICO claims fail as a matter of law. *See id.; see also Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260 (D.C. Cir. 1995) (finding no pattern, where plaintiffs alleged only a single scheme ("to prevent

or delay the sale of Alban Towers, or to secure a ransom for allowing the sale to proceed"), consisting of a single discrete injury ("the loss of the sale (or payment of the ransom)"), suffered by a small number of victims ("three: Edmondson & Gallagher, Byrd and Georgetown"), and therefore, according to the court, "[w]e think that the combination of these factors (single scheme, single injury, and few victims) makes it virtually impossible for Plaintiffs to state a RICO claim.").

B. **Plaintiffs Have Failed to State Claims for Common Law Fraud**

Plaintiffs' allegations of fraud consist of conduct solely directed at the ITC. (Compl. ¶¶ 66-69 ("false and misleading statements and omissions made by defendants and their coconspirators to the ITC were designed to induce and were a material factor in the government's decision to impose duties . . .").) Plaintiffs allege that the antidumping duties were the direct result of fraudulent conduct of defendants and co-conspirators—conduct directed to the ITC.

As noted above, the plaintiffs have not alleged all the requisite elements of fraud, which requires (1) a false representation; (2) made in reference to a material fact; (3) with knowledge of its falsity; (4) with the intent to deceive; (5) resulting in detrimental reliance by the plaintiffs. *See Antoine*, 547 F. Supp. 2d 30. The "action that is taken in reliance" must be action of the plaintiffs. Here, even if taken to be true, plaintiffs' Complaints allege no reliance by plaintiffs on any allegedly fraudulent statements by Elkem Metals, Elkem AS, or any of the other Defendants. Accordingly, plaintiffs have failed to state claims for fraud and Count IV of each of the Complaints must be dismissed.

C. **Plaintiffs Have Failed to State Claims for Abuse of Process**

Like their allegations of fraud, the plaintiffs' allegations related to their abuse of process claims again turn on alleged conduct of the defendants directed toward a third party—the ITC— rather than directed toward plaintiffs. Plaintiffs allege, for example, that defendants' "allegedly

fraudulent conduct in obtaining antidumping relief from the ITC" was "an improper use of the administrative proceedings and amounts to an abuse of process" (Compl. ¶ 72); that each defendant "and their co-conspirators initiated and carried out the prosecution of antidumping petitions" (*id.* ¶ 73); and that defendants' allegedly "fraudulent conduct *before the ITC*, and the tainted proceedings themselves, resulted in the perversion of the ***administrative process* ....**" (*id.* ¶ 74 (emphasis added).) Plaintiffs acknowledge, as they must, that all allegedly fraudulent activity and "process", so to speak, was directed solely toward the ITC, and took place before the ITC. For this reason, among others, plaintiffs' abuse of process claims are not sustainable as to any defendant, but certainly not as to either Elkem Defendant.

To prevail on a claim for abuse of process against the Elkem Defendants, the plaintiffs must demonstrate that: (1) the Elkem Defendants were "motivated by an ulterior purpose in bringing legal proceedings *against the plaintiffs*," and (2) the proceedings resulted in "a perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge." *McCarthy v. Kleindienst*, 741 F.2d 1406 (D.C. Cir. 1984) (emphasis added, citing *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980)). Alternatively, an abuse of process claim is cognizable where the "perversion of court processes...compels the party against whom it has been used to do some collateral thing which he could not legally and regularly be compelled to do." *Washington Medical Center, Inc. v. Holle*, 573 A.2d 1269, 1285 (D.C. 1990) (citing *Williams v. City Stores*, 192 A.2d 534, 537 (D.C. 1963)); *see Morowitz*, 423 A.2d at 198 (affirming dismissal of abuse of process claim; merely filing a claim in a lawsuit was not actionable, "no matter what ulterior motive may have prompted it" and the fact that a counterclaim was filed with the ulterior motive of coercing a settlement was insufficient to support a cause of action for abuse of process "where there was no showing that the process was, in fact, used to accomplish an end not regularly or legally obtainable").

38

Plaintiffs' claims fail for several basic, self-evident reasons.  First, and most obviously, there were no legal proceedings ever asserted against any of the plaintiffs by any of the defendants, and certainly not by either Elkem Defendant.[29]  Second, to the extent that the plaintiffs actually did participate in the proceedings before the ITC and DOC, the plaintiffs were not so compelled (nor, for that matter, have they alleged as much).[30]  Third, the end result of the administrative proceedings—the determination of material injury to the domestic industry and the imposition of antidumping duties—was an end both regularly and legally obtainable, notwithstanding the plaintiffs' conclusory and unsupported statement to the contrary.  It should be emphasized that the result of the administrative proceedings was one that, importantly, is not contingent solely upon the testimony and/or submissions of the petitioners, but requires independent analyses and determinations by both the ITC and DOC before such duties will be imposed.  For all these reasons, the plaintiffs have not alleged facts sufficient to support a claim for abuse of process.

D. **Plaintiffs Have Failed to State Claims for Common Law Malicious Prosecution**

In the District of Columbia, malicious prosecution requires: "(1) [that] the underlying suit terminated in Plaintiffs' favor; (2) malice on the part of the defendant; (3) lack of probable cause for the underlying suit; and (4) special injury occasioned by the Plaintiffs as the result of the original action." *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980).[31]  Here, again presuming that the "underlying suit" is the petition filed with the ITC, plaintiffs still cannot show a lack of

---

[29] To the extent that plaintiffs may attempt to assert that the filed petitions were effective as process against them, it is relevant to emphasize that neither Elkem Defendant filed any petitions and that the plaintiffs were not required to participate in those proceedings.

[30] At most, the plaintiffs were invited to participate in the proceedings once the petitions had been filed by certain of the other defendants – and not either Elkem Defendant.  The plaintiffs cannot deny that they were never personally served with process of any sort at the instance of any of the defendants.

[31] For malicious prosecution and abuse of process claims, it is where the proceedings at issue took place that typically determines the body of governing law. *E.g., Demery v. Montgomery County, MD*, 602 F.Supp.2d 206 (D.D.C. 2009) (where affidavit and proceedings at issue occurred in Maryland, Maryland law applied to malicious prosecution claim).

probable cause for the filing of the petition.  This is established unequivocally by the fact that the

ITC and DOC found the existence of an injury to the domestic market due to plaintiffs' dumping

of ferrosilicon—a determination that involved considerations wholly independent of the

defendants' petitions.

Moreover, plaintiffs cannot establish that Elkem Metals' limited involvement, by way of

submitting answers to a questionnaire to the ITC, was submitted with any malice whatsoever,

because, among other things, the petition was not filed with reference to the plaintiffs in

particular, and rather, was directed at the dumping of ferrosilicon from Brazil.

Because plaintiffs' Complaints allege no facts to support the existence of these elements

of malicious prosecution, plaintiffs' claims for damages for malicious prosecution must be

dismissed.

## CONCLUSION

For all the foregoing reasons, defendants Elkem Metals, Inc., and Elkem AS respectfully request that this Court dismiss with prejudice all counts of both Complaints for lack of personal jurisdiction, subject matter jurisdiction, and for failure to state claims upon which relief can be granted.

Respectfully submitted,


_____*Edward J. Longosz, II*_____
Edward J. Longosz, II  (#368932)
Eckert Seamans Cherin & Mellott, LLC
1747 Pennsylvania Avenue, NW, Ste 1200
Washington, D.C. 20006-4604
(202) 659-6619
*elongosz@eckertseamans.com*

Dale Hershey
Pa. I.D. No. 00658
(Admitted *Pro Hac Vice*)
Michael R. Borasky
Pa. I.D. No. 21330
Audrey K. Kwak
Pa. I.D. No. 200527

Eckert Seamans Cherin & Mellott, LLC
600 Grant Street, 44th Floor
Pittsburgh, PA  15219
(412) 566-6000
*dhershey@eckertseamans.com*

Counsel for Defendants Elkem Metals, Inc.,
and Elkem AS

Dated:  October 30, 2009

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 30, 2009, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

      *Edward J. Longosz, II*
      Attorney for Defendants

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| COMPANHIA BRASILEIRA CARBURETO de CALCIO – CBCC , | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| APPLIED INDUSTRIAL MATERIALS CORPORATION, et al. | ) ) ) | Case No. 1:01cv000646 (RMC) |
| Defendants. | ) ) ) | |
| COMPANHIA FERROLITAS MINAS GERAIS – MINASLIGAS, CIA, et al. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| APPLIED INDUSTRIAL MATERIALS CORPORATION, et al., | ) ) ) | Case No. 1:01cv0002678 (RMC) |
| Defendants. | ) | |

## [PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This matter, having come before the Court on the Elkem Defendants' Motions to Dismiss for Lack of Personal Jurisdiction, Failure to State a Claim, and Lack of Standing, and it appearing, upon argument of counsel and for good cause shown, that the Motions should be granted,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Failure to State a Claim, and Lack of Standing, is GRANTED, and the Complaints filed by Plaintiffs in Case Nos. 1:01cv000646 and 1:01cv0002678 are hereby DISMISSED with PREJUDICE.

DATED: _____, 2009.          By: _____

Honorable Rosemary M. Collyer
United States District Judge