**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Companhia Brasileira Carbuerto de Calcio – CBCC**  Plaintiff,  v.  **Applied Industrial Materials Corp., et al.**  Defendants. | Case No. 01-0646 (RMC) |
| **Companhia Gerroligas Minas- Gerais – Minasligas, et al.**  Plaintiff,  v.  **Applied Industrial Materials Corp., et al.**  Defendants. | Case No. 01-2678 (RMC) |

**DEFENDANT APPLIED INDUSTRIAL MATERIALS
CORPORATION'S MOTION TO DISMISS**

Defendant Applied Industrial Materials Corporation respectfully moves the court pursuant to Fed. R. Civ. P. 12 (b) for an order dismissing the identical complaints filed against it in these two actions for (1) lack of personal jurisdiction, (2) failure to be commenced timely, and (3) failure of each count to state a claim upon which relief may be granted.

A proposed order is submitted herewith.

        Respectfully submitted,

        WILLIAMS MONTGOMERY & JOHN LTD.

        By: /s/ Theodore J. Low
        Theodore J. Low
        Brian Y. Boyd
        WILLIAMS MONTGOMERY & JOHN LTD.
        Willis Tower
        233 South Wacker Drive, Suite 6100
        Chicago, Illinois  60606
        312/443-3200

        GARSON CLAXTON LLC

        By: /s/ Charles R. Claxton
        Charles R. Claxton, D.C. Bar No. 249979
        GARSON CLAXTON LLC
        7910 Woodmont Avenue, Suite 650
        Bethesda, MD 20814
        (301) 280-2700

        Counsel for Applied Industrial
        Materials Corporation

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **Companhia Brasileira Carbuerto de Calcio – CBCC** | : | |
| Plaintiff, | : | |
| v. | : | Case No. 01-0646 (RMC) |
| **Applied Industrial Materials Corp., et al.** | : | |
| Defendants. | : | |
| **Companhia Gerroligas Minas- Gerais – Minasligas, et al.** | : | |
| Plaintiff, | : | |
| v. | : | Case No. 01-2678 (RMC) |
| **Applied Industrial Materials Corp., et al.** | : | |
| Defendants. | : | |

**DEFENDANT APPLIED INDUSTRIAL MATERIALS CORPORATION'S
<u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>**

**INTRODUCTION**

These cases were filed in 2001 based on actions alleged to have been taken by the defendants in the years 1989 through 1993. For various reasons, consideration of whether the claims here set forth sustainable causes of action has been delayed until now. However, upon

such consideration it is obvious that the two identically worded Complaints must be dismissed for, among other reasons, failure to state a claim upon which relief can be granted.

**BACKGROUND**

The Plaintiffs are Brazilian producers of a product known as "ferrosilicon" which is used in the production of steel.  The Defendants – including movant, Applied Industrial Materials Corporation ("AIMCOR") – are (or at least were during the relevant period) United States producers of ferrosilicon (or alleged affiliates of such producers).  In 1993, certain of the Defendants and/or their affiliates filed an "anti dumping" petition with the United States International Trade Commission  ("ITC") that sought to impose duties on the imports of ferrosilicon from, among other countries, Brazil.  In February 1994 the ITC determined that in fact the domestic ferrosilicon industry was materially injured by dumped ferrosilicon from Brazil; as alleged in the Complaints, this determination effectively ended the ability of the Plaintiffs to import ferrosilicon into the United States. (Complaint ¶ 46.)

The Complaints in these actions essentially contend that the Defendants obtained the aforesaid determination of the ITC by means of fraudulent misrepresentations to the ITC. (Complaint ¶ 24.) The Plaintiffs further allege in their Complaints that in 1993, the Department of Justice began an inquiry into the domestic ferrosilicon industry that resulted in (a) one of the Defendants here pleading guilty in 1995 to conspiring to fix the price of domestic ferrosilicon from late 1989 to mid 1991 and (b) a second Defendant here being convicted in 1997 of the same price fixing conspiracy and (c) a third Defendant being named as an unindicted co conspirator in that conspiracy. (Complaint ¶¶ 26-27.) *We emphatically note that despite the intensive investigation by the Department of Justice, AIMCOR was never charged with or found to have participated in this conspiracy and was not named as an unindicted co conspirator.* The

Complaints further allege that upon learning of the existence of the domestic price fixing conspiracy, the ITC reversed its earlier determination that the domestic ferrosilicon industry had been injured by imports from Brazil. (Complaint ¶ 37.)

On March 26, 2001, the Plaintiff CBCC filed its Complaint in this action. Plaintiffs Minasligas et al. filed their identically worded Complaint in December 2001. Both Complaints seek recovery for alleged violations of the antitrust laws, the RICO statute and various common law causes of action.

## ARGUMENT

### I. Personal Jurisdiction

There is no basis for the exercise of personal jurisdiction over AIMCOR in this matter. AIMCOR is not "present" in this District and the claims alleged do not arise out of contacts between AIMCOR and this District.

We adopt the "Motion of Defendant AIMCOR to Dismiss The Complaint For Lack of Jurisdiction" filed on June 8, 2001 and briefs and supporting papers previously filed by AIMCOR on this topic. (Docs. 15, 31). Although on April 24, 2002 Judge Jackson denied this motion without prejudice (Doc. 47), we submit that it remains a compelling argument for dismissal.

### II. Statute of Limitations

All of the claims in this case are time barred. The applicable statute of limitations for each cause of action is as follows: Count I (antitrust) four years (15 U.S.C. § 15b); Count II (RICO) four years (*Agency Holding Corp. v. Malley-Duff & Associates, Inc*., 483 U.S. 143, 156, 107 S.Ct. 2759, 2767 (1987)); Count III (RICO conspiracy) four years (*id*.); Count IV (common law fraud) three years (*Richards v. Duke University*, 480 F. Supp. 2d 222, 235 (D.D.C. 2007));

Count V (common law abuse of process) three years (*Nader v. Democratic Nat. Committee*, 567 F.3d 692, 699 (D.C. Cir. 2009); and Count VI (common law malicious prosecution) one year. (*Id.*; D.C. Code § 12-301(4)).

The conspiracy alleged in the Complaints culminated in February 1994 when the ITC determined that the domestic ferrosilicon industry was materially injured by reason of dumped imports of ferrosilicon from Brazil. (Complaint, ¶ 24.) The Complaints in these cases were filed, respectively, in March and December 2001, more than seven years later.

With respect to the plaintiff's antitrust claim, it has long been held that an antitrust violation accrues on the date that the injury occurred, without regarding to any discovery rule. *See Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 342, at n.10 (D.C. Cir. 1991) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338, 91 S.Ct. 795, 806 (1971)). Since the alleged injury occurred in February 1994, the antitrust claims are time barred.

With regard to the RICO claims, the Supreme Court held in *Rotella v. Wood*, 528 U.S. 549, 553-54, 120 S.Ct. 1075, 1080 (2000) that a RICO claim accrues when plaintiff knew or should have known of his *injury.* As the Court explained: "in applying a discovery accrual rule, we have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." 528 U.S. at 555, 120 S.Ct. at 1081; s*ee also Hargraves v. Capital City Mortg. Corp.*, 140 F. Supp. 2d 7, 17 (D.D.C. 2000) ("Even if plaintiffs were able to point to facts in dispute regarding the allegations of fraudulent concealment, *Rotella* makes clear that knowledge of the injury, rather than knowledge of the pattern of RICO activity, starts the clock running for statute of limitations purposes.") Since the Plaintiffs, Brazilian importers of ferrosilicon, were aware of the imposition of the duties on ferrosilicon from Brazil from the time

they were imposed in February 1994 (*see* Complaints ¶25), the RICO claims filed in 2001 are not timely.

With regard to the common law counts of the Complaints, even assuming that the "discovery rule" applies, these counts must also be dismissed on statute of limitations grounds. The Plaintiffs' alleged injury occurred and was known to them in or about February 1994. The existence of a price fixing conspiracy in the domestic ferrosilicon industry was public knowledge no later than September 1995 when Defendant Elkem pled guilty to having participated in such a conspiracy. (Complaint ¶ 27.) The details of this conspiracy were described at length in a public trial that culminated in the March 17, 1997 conviction of Defendant SKW (now "CCMA") and one of its executives. (*Id.*) The earlier filed of the two Complaints at issue here was not filed until more than four years after the date of that conviction.

Thus, the Plaintiffs were aware of all of the underlying facts alleged in the Complaints more than four years prior to the date of bringing suit. All of the claims alleged in the Complaints are therefore barred by the applicable statute of limitations.

### III. Failure To State A Claim

#### A. Count I

The Plaintiffs lack standing to bring Count I, based on alleged violations of the antitrust laws.

The Complaints allege that, as a result of the Defendants' actions, Plaintiffs, competitors of the Defendants, were "not able to import ferrosilicon into the United States." (Complaint ¶ 46.) However, the Supreme Court has ruled that the antitrust laws do not provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation. *Hawaii v. Standard Oil Co.,* 405 U.S. 251, 263 n. 14 (1972). Instead, a plaintiff must demonstrate "antitrust

standing," which requires a showing that the alleged injury is not too far removed from the alleged antitrust violation. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 540, 103 S.Ct. 897, 909 (1983) (holding that in determining antitrust standing the court should consider "the directness or indirectness of the asserted injury."); *Andrx Pharmaceuticals, Inc. v. Biovail Corp. Int'l.*, 256 F.3d 799, 816, n.19 (D.C. Cir. 2001) ("Antitrust standing also requires proximity between the alleged cause and the alleged injury."). [1]

As it happens, the District Court in Pennsylvania has previously determined, in a case presenting essentially the same facts and some of the same parties, that an importer prevented from selling in the United States because of an ITC ruling allegedly obtained by fraud and conspiracy does not have antitrust standing. *Midland Export Ltd. v. Elkem Holding Inc.,* 947 F. Supp. 163 (E.D. Pa. 1996). As the Court stated in *Midland Export,* even if the ITC took action "in reliance on market information distorted by Defendants' conspiracy…, the ITC's action was still the direct cause of the harm alleged here. Defendants' conspiracy, even if a significant influence on the ITC's determination, was nonetheless an indirect cause of [Plaintiff's] harm." 947 F. Supp. at 166.

The same result – dismissal of the antitrust claim for lack of standing – should obtain here.

**Count II**

The Complaints fail to state a cause of action under RICO. The Complaints fail to satisfy

---

[1] At one point the Complaints allege that because the Plaintiffs were not able to import ferrosilicon into the United States, domestic ferrosilicon prices were "artificially inflated." (Compl. ¶ 46.) Of course, such an allegation does not confer standing on the Plaintiffs because they were sellers, not purchasers, of ferrosilicon. Only purchasers – and direct purchasers at that – can complain about inflated prices. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745-46, 97 S.Ct. 2061, 2074-75 (1977).

the "pattern" requirement of that statute. At best, the actions described in the Complaints constitute a single scheme of limited duration with a single injury and a limited number of victims.

In determining whether a RICO "pattern" has been established, the Court should consider the following factors: "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity." *Western Associates Ltd. Partnership, ex rel. Ave. Associates Ltd. Partnership v. Western Associates Ltd. Partnership, ex rel. Ave. Associates Ltd. Partnership v. Market Square Associates*, 235 F.3d 629, 633 (D.C. Cir. 2001) (quoting *Edmondson & Gallagher v. Alban Towers Tenants Association*, 48 F.3d 1260 (D.C. Cir. 1995)).

In this case, the well pleaded facts of the Complaints allege precisely two "predicate acts" with regard to the scheme to cause the ITC to impose anti dumping duties on ferrosilicon imported from Brazil. (Complaint, ¶55 n and ¶ 55o.) [2] As the Supreme Court stated in *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3286, n.14 (1985), " in common parlance two of anything do not generally form a 'pattern.'"

Moreover, even if more alleged "predicate acts" were to be considered, those acts were all alleged instances of mail and wire fraud. [3] The D.C. Circuit has recognized, as have other circuits, that:

> "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." This caution stems from

---

[2] There are other "predicate acts" alleged in the Complaints, but on their face they all relate to an agreement to fix prices (which is not actionable by the Plaintiffs here) or attempts to cause the ITC to impose duties on ferrosilicon coming from some country other than Brazil (also not actionable by these Plaintiffs) or post hoc and unsuccessful arguments to attempt to persuade the ITC not to lift the duties after the antitrust conspiracy came to light (which obviously caused no injury to the Plaintiffs).

[3] Violations of antitrust law are not predicate acts under RICO. *See, e.g., Jennings v. Emry*, 910 F.2d 1434, 1438 (7th Cir. 1990).

the fact that "[i]t will be the unusual fraud that does not enlist the mails and wires in its service at least twice."

*Western Associates Ltd. Partnership, ex rel. Ave. Associates Ltd. Partnership v. Western Associates Ltd. Partnership, ex rel. Ave. Associates Ltd. Partnership v. Market Square Associates*, 235 F.3d 629, 637 (D.C. Cir. 2001) (citations omitted).

In this case there is but a single scheme alleged – a scheme to cause the ITC to impose tariffs on ferrosilicon imported from Brazil. This scheme was of limited duration (the relevant anti dumping petition was filed in January 1993 and relief was granted in February 1994). There were a limited number of victims – Brazilian (or at most foreign) – producers of ferrosilicon. The scheme was allegedly carried out by means of predicate acts that were all wire or mail fraud.

In short, this is a case much like *Edmondson & Gallagher, supra,* 48 F. 3d at 1265, in which there was a "single scheme, single injury and few victims" – and no RICO "pattern." [4]

### B. Count III

Count III seeks to recover for an alleged RICO conspiracy. Obviously, however, the Plaintiffs cannot establish a RICO conspiracy if they cannot establish a RICO violation. Therefore for the reasons set forth above with regard to Count II, Count III fails to state a claim.

### C. Count IV

The Complaints fail to state a claim for common law fraud.

---

[4] Furthermore: "Although first-party reliance is not a necessary element of a civil RICO claim based on mail fraud, a plaintiff claiming fraud as a predicate act must nonetheless allege 'a sufficiently direct relationship between the defendant's wrongful conduct and the plaintiff's injury' to satisfy the proximate cause requirement." *Ficken v. AMR Corp.*, 578 F. Supp. 2d 134 (D.D.C. 2008). For the same reasons that the plaintiff's antitrust claim fails, its RICO claims, based on fraud on the ITC, are too far removed from the alleged damages to support cognizable claims.

In order to support a fraud claim, a plaintiff must show that the defendant, with the intent to induce reliance, knowingly misrepresented or omitted a material fact upon which the plaintiff reasonably relied to his detriment. *Media General, Inc. v. Tomlin*, 532 F.3d 854, 858 (D.C. Cir. 2008); *see also Alicke v. MCI Communications Corp.*, 111 F.3d 909, 912 (D.C. Cir 1997) ("A claim for common law fraud … requires, among other things, an allegation that the plaintiff acted in reliance upon the alleged misrepresentation…"). Thus common law fraud requires that the misrepresentations be made ***for the purpose of inducing reliance by the plaintiff*** on those misrepresentations ***and that the plaintiff in fact reasonably relied upon them.***

Count IV alleges misrepresentations to the ITC, ***not*** to the plaintiffs. Moreover Count IV contains no allegations that the Plaintiffs in fact relied – reasonably or otherwise – on any representations of the Defendants. The allegations of misrepresentations to the ITC are thus insufficient to support a claim for common law fraud. *See Jovanovic v. US-Algeria Business Council*, 561 F. Supp. 2d 103, 117 (D.D.C. 2008) ("…Plaintiff's allegations that the Algerian Government took actions detrimental to Plaintiff in reliance on the [allegedly fraudulent] Correspondence does not establish that Plaintiff himself acted in detrimental reliance on that Correspondence."). Thus, plaintiff's common law fraud claim should be dismissed for failure to state a claim.

### D.  Count V

The Complaints fail to state a claim for common law abuse of process.

As the Court explained in *Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*, 383 F. Supp. 2d 32, 46 (D.D.C. 2005): "To prevail on a claim for abuse of process, a plaintiff must demonstrate that 'process has been used [by defendant] to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do

some collateral thing which he could not be legally and regularly required to do,'" *quoting Jacobson v. Thrifty Paper Boxes, Inc.,* 230 A. 2d 710, 711. (D.C. 1967).

Here the Complaints make no such allegations. It is within the purview of the ITC to enter antidumping orders and the Plaintiffs do not allege that they were compelled to do anything at all.

Instead, Plaintiffs state in the Complaints that "Defendants' conduct in obtaining antidumping relief is an improper use of the administrative proceedings and *amounts to* an abuse of process." (Complaints, ¶ 72; emphasis added.) However, other courts have explicitly held that ITC proceedings cannot form the basis for an abuse of process claim. *Competitive Technologies v. Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1155 (N.D. Cal. 2003) ("there appears to be no authority to support the existence of an abuse of process claim based on an ITC proceeding, either under state or federal law."); *Verve, L.L.C. v. Hypercom Corp.*, No. CV-05-0365-PHX-FJM, 2006 WL 2390505, at *5 (D. Ariz. Aug. 16, 2006) ("we conclude that counter-defendants' actions related to the ITC administrative proceedings cannot form the basis of an abuse of process claim.")

Under both federal and local law, Count V fails to state a claim for abuse of process.

**Count VI**

The Complaints fail to state a claim for malicious prosecution.

Under the law of the District of Columbia:

The elements of malicious prosecution are (1) the prosecution of a civil or criminal action, (2) maliciously and (3) without probable cause, (4) which terminated in favor of the defendant, and (5) which caused the arrest of the person, or seizure of the property of the defendant, or a special injury to the defendant which would not necessarily result in suits prosecuted to recover for like causes of action.

*Weisman v. Middleton*, 390 A.2d 996, 1002 (D.C. 1978).  In this case, plaintiff's malicious prosecution claim falls on the first element.  The Complaints allege no prosecution of any civil or

criminal action against the Plaintiffs. "Malicious prosecution" – as the name implies – only occurs where the plaintiff is subject to some prosecution. *See Byrne v. Frank Cunningham Stores*, 89 F. Supp. 489, 490 (D.D.C. 1950) ("The plaintiff here took no part in the original proceedings; thus she was subject to no prosecution.") In this case, there are no allegations that the plaintiff was prosecuted or even made a party to any suit. Thus, Count V must be dismissed for failure to state a claim.

**CONCLUSION**

For the foregoing reasons, as well as the arguments advanced by the other Defendants in these cases, Defendant Applied Industrial Materials Corporation requests that the Complaints in these actions be dismissed in their entirety with prejudice.

Respectfully submitted,

WILLIAMS MONTGOMERY & JOHN LTD.


By:  /s/ Theodore J. Low
Theodore J. Low
Brian Y. Boyd
WILLIAMS MONTGOMERY & JOHN LTD.
Willis Tower
233 South Wacker Drive, Suite 6100
Chicago, Illinois  60606
312/443-3200



GARSON CLAXTON LLC


By:  /s/ Charles R. Claxton
Charles R. Claxton, D.C. Bar No. 249979
GARSON CLAXTON LLC
7910 Woodmont Avenue, Suite 650
Bethesda, MD 20814
(301) 280-2700

Counsel for Applied Industrial
Materials Corporation