# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| COMPANHIA BRASILEIRA CARBURETO DE CALCIO - CBCC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 01-646 (RMC) |
| APPLIED INDUSTRIAL MATERIALS CORP., *et al.*, | ) ) ) ) | (Consolidated with Civil Action No. 01-2678 (RMC)) |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

In approximately 1989, various U.S. producers of ferrosilicon, a material used in making steel, entered into an illegal price fixing arrangement for domestic sales. Some of these producers then petitioned the International Trade Commission ("ITC") to impose import tariffs on foreign ferrosilicon for alleged unfair "dumping" of those products at low prices in the United States. The ITC was persuaded, and the Department of Commerce imposed duties on foreign ferrosilicon in 1993 and 1994, causing Plaintiffs, Brazilian ferrosilicon producers, to withdraw from the U.S. market. In 2001, Plaintiffs brought these consolidated cases charging that the ITC petition was full of inaccuracies, misrepresentations, and outright fraudulent statements and seeking damages from U.S. ferrosilicon producers and two of their foreign parent companies.

These cases have languished for years, awaiting final action on Plaintiffs' efforts to get the ITC to lift the import tariffs. The ITC lifted the import tariffs in August 1999, and after a great deal of additional litigation, that decision was affirmed by the Court of International Trade

("CIT") and the Federal Circuit. *See Elkem Metals Co. v. United States*, No. 99-00627, 2008 WL 4097463 (CIT Sept. 5, 2008) (affirming the ITC's fourth remand determination), *aff'd without op.*, No. 2009-1007, 2009 WL 1285837 (Fed. Cir. May 11, 2009). Now that this Court can again proceed, Defendants have re-filed motions to dismiss,[1] challenging the Court's personal jurisdiction over them. The Court will grant the motions.[2]

## I. FACTS

These lawsuits allege a price fixing conspiracy and an antidumping conspiracy in the ferrosilicon industry dating back to 1989. The price fixing conspiracy was the subject of criminal prosecutions and treble damages actions that terminated over a decade ago. Plaintiffs are three Brazilian producers of ferrosilicon: Companhia Brasileira Carbureto de Calcio – CBCC ("CBCC"); Companhia Perroligas Minas Gerais – Minasligas; and Cia. De Ferroligas Da Bahia – Ferbasa.[3] They filed two identical complaints[4] alleging that the Defendants conspired to file antidumping

---

[1] Shortly after these cases were filed, Defendants filed motions to dismiss. Judge Thomas Penfield Jackson, the presiding judge at that time, denied the motions without prejudice while waiting for final action by the ITC. Judge Jackson has since retired from the bench, and these cases were transferred to the undersigned.

[2] Defendants also assert that Plaintiffs' lack standing to proceed and that the cases should be dismissed under the relevant statutes of limitations. *See* 15 U.S.C. § 15b (imposing a 4 year statute of limitations on RICO and Sherman Act claims). Because the Court finds it lacks personal jurisdiction over Defendants, it does not reach these issues.

[3] Rima Industrial S/A was also a plaintiff but it voluntarily dismissed its claim without prejudice on November 30, 2009, *see* Not. of Voluntary Dismissal [Dkt. #85], and thus it is no longer a party to this suit. *See* Minute Order filed Dec. 2, 2009 (approving dismissal).

[4] CBCC filed its Complaint, Civil Action No. 01-646, on March 26, 2001. The other Plaintiffs filed a substantively identical Complaint, Civil Action No. 01-2678, on December 28, 2001. The Court consolidated the cases for all purposes. *See* Order [Dkt. # 44]. The complaints are identical, except for the naming of different plaintiffs, and because the second complaint names three plaintiffs and not just one, the paragraphs are numbered differently. For ease of reference, citations

petitions with the ITC "to prevent foreign producers from undercutting the conspiratorially induced high domestic prices for ferrosilicon." Compl. [Dkt. # 1] ¶ 18.  Defendants include:

> (1)  Applied Industrial Materials Corporation, a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania ("AIMCOR");
>
> (2)  Elkem Metals Company, Inc.[5], a New York partnership with its principal place of business in Pittsburgh, Pennsylvania ("Elkem Metals");
>
> (3)  Elkem A/S, a Norwegian corporation with its principal place of business in Oslo, Norway, and parent of Elkem Metals;
>
> (4)  Globe Metallurgical, Inc., a Delaware corporation with its principal place of business in Beverly, Ohio ("Globe");
>
> (5)  CC Metals and Alloys, Inc. (formerly known as SKW Metals & Alloys, Inc. ("SKW")), a Delaware corporation with its principal place of business in Amherst, New York ("CC Metals");
>
> (6)  SKW Trostberg AG, a German corporation with its principal place of business in Trostberg, Germany, and former parent of SKW ("Trostberg");[6] and
>
> (7)  The Ferroalloys Association, a trade association of ferrosilicon producers located in Washington, D.C. ("TFA").

The Complaint alleges that the Defendants defrauded the ITC, and as a result of the conspiracy, the Department of Commerce imposed antidumping duties that harmed Plaintiffs. Plaintiffs allege that Defendants have violated section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1

---

to the Complaint in this Opinion are to the Complaint [Dkt. # 1] in Civil Action No. 01-646.  Note that Defendants filed identical motions to dismiss in Civil Action Nos. 01-646 and 01-2678.  For ease of reference, this Opinion cites only the docket numbers in Civil Action No. 01-646.

[5]  Elkem Metals, Inc., is the successor of Elkem Metals Company, Inc.

[6]  Evonik Degussa GmbH is the successor to SKW Trostberg AG.  To lessen confusion, the Court will refer to it as "Trostberg."

(Count 1) and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) & (d) (Counts II and III).[7]

AIMCOR, Globe, and three unions representing Elkem and SKW employees filed an antidumping petition with the ITC on January 12, 1993, regarding ferrosilicon imports from Brazil. Compl. ¶¶ 19-20; *see also id*. ¶ 20 ("Although SKW and Elkem did not join in the petition, they [ ] participated in the decision to file, helped to defray the costs, including legal representation fees, and induced, or consented to, their unions joining in the petition."). Defendants allegedly coordinated their false and misleading responses to ITC questionnaires and their false and misleading testimony before the ITC. *Id*. ¶¶ 22-23; *see also id*. ¶ 38 ("In fact, the ITC specifically referred to William Beard, President of American Alloys, Arden Sims, President of Globe, Charles Kopec, President of AIMCOR, and Charles Zak, Senior Vice President of SKW, as examples of industry individuals who provided inaccurate and misleading information to the ITC.")[8]

The essence of the false statements made by Defendants to the ITC was that the domestic market for ferrosilicon was competitive and price sensitive and that imports of ferrosilicon were being dumped in the United States market and sold at unfairly low prices. *Id*. ¶ 23. The ITC relied on Defendants' fraudulent misrepresentations and determined in 1993 that the domestic ferrosilicon industry was materially injured by reason of dumped ferrosilicon imports from China,

---

[7] Plaintiffs also originally claimed, based on the same alleged conduct, that Defendants were liable for fraud (Count IV), abuse of process (Count V), and malicious prosecution (Count VI). However, Plaintiffs now withdraw Counts IV, V, and VI. *See* Pls.' Opp'n to Domestic Defs.' Mot. to Dismiss [Dkt. # 86] at 7 n.4.

[8] Plaintiffs allege that AIMCOR, Elkem Metals, Globe, and SKW provided  false questionnaires to the ITC, *see, e.g.*, Compl.  ¶¶ 55f, 55g, 55i, 55m; Plaintiffs do not allege who specifically provided any other testimony to the ITC.

Kazakhstan, Ukraine, Russia, and Venezuela; Brazil was added to the list in 1994. *Id.* ¶ 24.

In the meantime, in 1993, the Antitrust Division of the Department of Justice began an investigation of the domestic silicon products industry for alleged price fixing. *Id.* ¶ 26. That investigation ultimately resulted in a September 22, 1995 guilty plea by Elkem Metals.[9] *Id.* ¶ 27. On March 17, 1997, SKW (now known as CC Metals, a Defendant here) and its senior vice president, Charles Zak, were convicted of conspiracy to fix the prices of ferrosilicon in the United States from late 1989 until mid-1991. *Id.* Globe and its president, Arden Sims, were named as unindicted co-conspirators. *Id.* The other Defendants — AIMCOR, Elkem A/S, and Trostberg — were never charged with any illegal activity nor named as unindicted co-conspirators in the price fixing conspiracy.[10]

On April 24, 1998, Plaintiffs requested that the ITC review its 1993 finding on the antidumping petition in favor of U.S. producers of ferrosilicon. *Id.* ¶ 28. The ITC published a notice in the Federal Register requesting comments on whether it should review its prior determination. *Id.* ¶ 29. After reviewing the comments, on July 28, 1998, the ITC announced that the price fixing convictions and guilty pleas were a sufficient basis to warrant review of its investigation. *Id.* ¶ 30. In August 1999, the ITC reversed its original decision and found that U.S. producers of ferrosilicon were not materially injured by imports. *Id.* ¶ 37. This decision was appealed and, after numerous appeals and remands, the CIT sustained the ITC's decision, and the Federal Circuit summarily

---

[9] American Alloys, Inc. also pled guilty, but it filed a petition for bankruptcy protection in January 2000, and Plaintiffs did not name it as a defendant in these cases.

[10] At times, Plaintiffs conflate the price fixing conspiracy with the antidumping conspiracy. The injury alleged in these cases arose from the ITC's imposition of an antidumping tariff. Thus, allegations regarding the guilty pleas and convictions for price fixing are not directly relevant and only provide background here.

affirmed the CIT. *See Elkem Metals*, 2008 WL 4097463, *aff'd without op.*, 2009 WL 1285837.

As the ITC proceedings and related appeals have now concluded, proceedings in this Court have resumed. The Defendants now renew their motions to dismiss.

## II.  STANDARD OF REVIEW

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction over the defendant. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). The plaintiff must allege specific acts connecting the defendant with the forum. *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001). Bare allegations and conclusory statements are insufficient. *Id.*

In determining whether a factual basis for personal jurisdiction exists, the court should resolve factual discrepancies appearing in the record in favor of the plaintiff. *Crane*, 894 F.2d at 456. However, the court need not treat all of the plaintiff's allegations as true. *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000). Instead, the court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Id.*

## III.  ANALYSIS

A plaintiff has the burden of establishing the court's personal jurisdiction over defendants. *FC Inv. Group LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1091 (D.C. Cir. 2008). The question of whether any of the Defendants is subject to personal jurisdiction in this District must be determined on the basis of their contacts with the forum at the time these consolidated cases were commenced; post-complaint contacts are not considered. *See Keene Corp. v. United States*, 508 U.S.

200, 207 (1993); *Allen v. Russian Fed'n*, 522 F. Supp. 2d 167, 193-94 (D.D.C. 2007).

## A.  Lack of General Personal Jurisdiction

Courts in the District of Columbia apply D.C. Code § 13-334(a) to confer general

jurisdiction only "over foreign corporations doing substantial business in the District of Columbia."

*Gonzalez v. Internacional de Elevadores S.A.*, 891 A.2d 227, 233 (D.C. 2006).   The Complaint

alleges that the defendants reside or do business in this District, are licensed to do business here, or

have agents or maintain offices here.  Compl. ¶ 3.  These allegations are not borne out by the facts.

Only the trade association, TFA, did business in the District of Columbia; due to its bankruptcy,

however, Plaintiffs no longer pursue their claims against it.[11]  *See* Pls.' Opp'n at 17 n.8.  Thus, TFA

will be dismissed as a Defendant here.

All other Defendants assert that they do no business in the District of Columbia —

they are not incorporated here, this is not their principal place of business, they do not have agents

here, and they are not licensed here.  AIMCOR is a resident of Delaware and Pennsylvania; Elkem

Metals is a resident of New York and Pennsylvania; Elkem A/S is a resident of Norway; Globe is

a resident of Delaware and Ohio; CC Metals is a resident of Delaware and New York; and Trostberg

is a resident of Germany.  Despite the Complaint allegations, Plaintiffs do not contest these facts.

Thus, the Court cannot exercise general personal jurisdiction over Defendants.

## B.  Specific Jurisdiction and the Government Contacts Doctrine

Plaintiffs argue instead that specific jurisdiction applies under the D.C. long-arm

statute.  The long-arm statute extends personal jurisdiction to persons "transacting any business in

---

[11] TFA was liquidated pursuant to a Chapter 7 bankruptcy process and all of its pre-bankruptcy debts were discharged.  *See* Suggestion of Bankruptcy [Dkt. # 63].

the District of Columbia," and to any person "causing tortious injury in the District of Columbia by

an act or omission in the District of Columbia." D.C. Code § 13-423(a)(1) & (a)(3). Long-arm

jurisdiction is limited — "only a claim for relief arising from the acts enumerated in this section

may be asserted against him." *Id*. § 423(b). Thus, claims unrelated to the acts forming the basis for

personal jurisdiction are barred. *Willis v. Willis*, 655 F.2d 1333, 1336 (D.C. Cir. 1981). A plaintiff

must allege specific facts evidencing purposeful activity in the District of Columbia, by which the

defendant invoked the benefits and protections of its laws. *Novak-Canzeri v. HRH Prince Turki Bin

Abdul Aziz Al Saud*, 864 F. Supp. 203, 205 (D.D.C. 1994). The purposeful activity must consist of

either conducting business or causing tortious injury in D.C. *Freiman v. Lazur*, 925 F. Supp. 14, 21

(D.D.C. 1996). Section 423(a)(3) requires that both the tortious act and the tortious injury must have

occurred in the District of Columbia. *Id*. at 22-23.

   Moreover, even when the long-arm test has been met, personal jurisdiction over a

nonresident can be exercised only where the constitutional due process standards are met. *GTE New

Media Servs., Inc. v. Bellsouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). "The constitutional

touchstone of the due process determination is 'whether the defendant purposefully established

minimum contacts in the forum state.'" *COMSAT Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515,

520 (D.D.C. 1995) (quoting *Asahi Metal Indus. Co. v. Superior Court of California, Solano County*,

480 U.S. 102, 108-09 (1987)).

   Plaintiffs allege that Defendants engaged in fraudulent conduct in the District of

Columbia by way of their contacts with the ITC.[12]  AIMCOR and Globe allegedly filed a fraudulent

---

[12] The Complaints also reference filings in the Court of International Trade. *See, e.g.,* Compl. ¶¶ 39, 40, 55(u). That court, however, is located in New York and not in the District of Columbia.

antidumping petition with the ITC, and AIMCOR, Globe, SKW, and Elkem Metals allegedly provided misleading information, including producer questionnaires,[13] to the ITC. *See* Compl. ¶¶ 19-20, 38, 55e-g, 55i-n, 55s-t.

Defendants argue that the "government contacts" doctrine bars reliance on their contacts with government agencies as a basis for personal jurisdiction. The doctrine shields defendants from suit in the District of Columbia when their sole contact with the District consists of activity before federal agencies for their own purposes. *See Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983). Simply put, such contacts may not be considered to establish personal jurisdiction, as to do so would contravene the fundamental purpose of the doctrine — to protect the First Amendment right to petition the government for redress of grievances, including petitions that constitute efforts to "solicit commercial opportunities." *Harran Transp. Co. v. Nat'l Trailways Bus System*, No. 84-2864, 1985 WL 2349, at *4 n.14 (D.D.C. Aug. 5, 1985) (bus sales); *see also Naartex*, 722 F.2d at 787 (lobbying). "To permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum." *Envtl. Research Int'l, Inc. v. Lockwood Greene Eng's, Inc.*, 355 A.2d 808, 813 (D.C. 1976) (*en banc*).

Plaintiffs contend that because Defendants' petition to the ITC was full of errors and outright fraud it is not shielded by the government contacts doctrine. *See* Pls.' Opp'n at 14.

_____

[13] ITC questionnaires have the force of a subpoena, *see* 19 C.F.R. § 207.8, and thus by responding to a questionnaire a defendant cannot be said to have purposefully availed itself of the forum. *See Novak-Canzeri*, 864 F. Supp. at 205 (to establish personal jurisdiction, a plaintiff must allege facts evidencing purposeful activity in the District of Columbia, by which the defendant invoked benefits and protections of its laws).

Plaintiffs rely on *dicta* from *Naartex* stating , "[a] different case might be presented had Naartex made credible and specific allegations . . . that the companies had used the proceedings as an instrumentality of the alleged fraud." 722 F.2d at 787; *see also Nichols v. G.D. Searle & Co.*, 783 F. Supp. 233, 243 (D. Md. 1992) (following *Naartex dicta*).

Despite the earlier *dicta* in *Naartex*, in *Freiman v. Lazur*, 925 F. Supp. 14, the district court squarely rejected the claim that the government contacts doctrine does not apply to a government contact that was allegedly fraudulent. In *Freiman*, the plaintiffs contended that personal jurisdiction could be exercised over a defendant based on the defendant's application to the U.S. Copyright Office. 925 F. Supp. at 24. The plaintiffs argued that the government contacts doctrine did not apply because the copyright application itself was fraudulent. *Id*. Emphasizing the need to permit "unfettered access to federal departments and agencies," the court rejected plaintiffs' argument summarily, holding that even a fraudulent copyright application could not serve as a basis for personal jurisdiction in the District of Columbia. *Id*. (citing *Envtl. Research*, 355 A.2d at 813).

Plaintiffs also assert that the government contacts doctrine is limited to activities protected by the First Amendment, and that because the First Amendment does not protect fraudulent speech, the government contacts doctrine should not apply when the communication with the federal instrumentality is fraudulent. *See Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976) ("Untruthful speech, commercial or otherwise, has never been protected [by the First Amendment] for its own sake."). Plaintiffs rely on the D.C. Court of Appeals decision in *Rose v. Silver*, 394 A.2d 1368, 1374 (D.C. 1978), which concluded that "the First Amendment provides the only principled basis for exempting a foreign defendant from suit in the District of Columbia . . . ."

The D.C. Circuit has disapproved the narrow view advanced by Plaintiffs. *Naartex*, 722 F.2d at 786. In *Naartex*, the Circuit explained that interpreting *Rose* to limit the government contacts principle to activities that implicate the First Amendment would conflict with the broader decision of the D.C. Court of Appeals *en banc* in *Environmental Research* — the decision that permitting personal jurisdiction over a nonresident whose sole contact with the District consisted of dealing with a federal agency would "pose a threat to free public participation in government" and "would threaten to convert the District of Columbia into a national judicial forum." *Envtl. Research*, 355 A.2d at 813. The Circuit explained that a panel has no authority to issue a decision in conflict with a ruling *en banc*, and thus the panel opinion in *Rose* should not be read to conflict with the clear holding of the *en banc* court in *Environmental Research*. *Naartex*, 722 F.2d at 786. While *Naartex* did not resolve the potential conflict between *Rose* and *Environmental Research*, it noted that the *en banc* holding controls. *Id.* at 786-87; *see also Inv. Co. Inst. v. United States*, 550 F. Supp. 1213, 1216 (D.D.C. 1982) (courts applying the government contacts doctrine "have not spoken in traditional First Amendment terms"). The government contacts doctrine bars Plaintiffs from relying on Defendants' participation in the ITC proceedings as a basis for personal jurisdiction.

## C. Foreign Defendants

Even if contacts with the ITC could be the basis of personal jurisdiction, the Court still would have to dismiss foreign corporations Trostberg and Elkem A/S because they were not at all involved in the ITC petition. Plaintiffs allege that Trostberg and Elkem A/S were involved in the ITC petition because unions representing the employees of their subsidiaries, SKW and Elkem Metals, respectively, signed the petition. First, Plaintiffs' assertion that the Court has personal jurisdiction over SKW and Elkem Metals because they "induced" their unions to join in the ITC

petition and because they paid the unions' legal fees, *see* Compl. ¶ 20, does not suffice to show any contact with the District of Columbia that would confer personal jurisdiction over SKW or Elkem Metals; there is no evidence that the alleged "inducing" or payment of fees occurred in the District. Further, personal jurisdiction over a parent corporation may be exercised based on the activities of its subsidiary only if the subsidiary is the agent or alter ego of the parent; mere stock ownership is insufficient. *Caribe Trailer Sys., Inc. v. Puerto Rico Mar. Shipping Auth.*, 475 F. Supp. 711, 717 (D.D.C. 1979), *aff'd without op.*, No. 79-1658, 1980 WL 130478 (D.C. Cir. July 3, 1980). Trostberg divested itself of any ownership in SKW on December 31, 1992, before the antidumping petition was filed relating to Brazilian imports in 1993. *See* Trostberg's Mot. to Dismiss [Dkt. # 80], Ex. 2 ("Lebert Decl.") ¶ 4. Trostberg did not submit any briefs or otherwise participate in the ITC petition as it had no legal or financial interest in the outcome of the petition. Lebert Decl. ¶¶ 8-10. Elkem Metals operates independently from Elkem A/S, with separate officers, staff, manufacturing facilities, and bank accounts. *See* Elkem's Mot. to Dismiss [Dkt. # 79], Ex. A ("LaRusso Decl.") ¶ 6. Plaintiffs point to no evidence in support of the proposition that Elkem Metals was the agent or alter ego of its parent or that SKW was the agent or alter ego of its former parent.

### D. Conspiracy Theory of Personal Jurisdiction

Plaintiffs also allege that the Court may exercise personal jurisdiction over all Defendants because they were co-conspirators of TFA, the ferrosilicon producer organization that did business in the District before its bankruptcy. "The conspiracy theory of jurisdiction provides that where a court has personal jurisdiction over the co-conspirator of a non-resident defendant . . . due to overt acts committed by the co-conspirator in the forum in furtherance of the conspiracy, the co-conspirator is deemed the non-resident defendant's 'agent' for purposes of the long arm statute."

*United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 122 (D.D.C. 2000). To establish a conspiracy theory of jurisdiction, a plaintiff must show that both the overt act and the injury occurred in the District. *Delgado v. Fed. Bureau of Prisons*, 727 F. Supp 24, 27 (D.D.C. 1989). Here, Plaintiffs' conspiracy theory of jurisdiction fails, as they do not allege any overt act by TFA in the District. Plaintiffs allege only that "TFA actively participated in the fraudulent conduct and conspiracy and was an instrument of the racketeering activity that forms part of the basis for plaintiff's suit," *see* Compl. ¶ 11, and that Defendants held meetings, made phone calls, and mailed letters "under the aegis of the TFA." *See id.* ¶¶ 18 & 22. These allegations do not demonstrate any overt act by TFA in the District.

### E.  Venue in a Criminal Case

Plaintiffs further claim that Defendants purposely acted within the District of Columbia to fraudulently obtain antidumping duties in violation of a criminal statute, 18 U.S.C § 1001(a); that venue for the prosecution of this crime would be proper here; and thus that Defendants should "reasonably anticipate being haled into a court" within the district where the defrauded agency is located. Pls.' Opp'n at 10. Plaintiffs cite no support whatsoever for this proposition. The proper venue for a criminal prosecution is not relevant to the issue of personal jurisdiction in a civil case, even where the civil case is allegedly related to the criminal case. Further, concepts of venue and personal jurisdiction are separate and distinct; the question of venue has no bearing on the question of personal jurisdiction. *Berning v. BBC Inc.*, 575 F. Supp. 1354, 1357-58 (D. Ohio 1983).

### F.  Plaintiffs' Alternative Request to Transfer

Plaintiffs request, in the event that the Court finds it lacks personal jurisdiction, that

the Court transfer these cases instead of dismissing them. A court may transfer a case even though

it lacks personal jurisdiction over the defendants. *Naartex*, 722 F.2d at 789. Transfer is proper under

28 U.S.C. § 1406(a) when procedural obstacles such as lack of personal jurisdiction impede

adjudication on the merits. *Sinclair v. Kleindienst*, 711 F.2d 291, 293-94 (D.C. Cir. 1983). Thus,

a court may transfer a case to any jurisdiction which has personal jurisdiction over the defendants

and in which venue is proper. *Haley v. Astrue*, 667 F. Supp. 2d 138, 142 (D.D.C. 2009) (citing 28

U.S.C. § 1406(a)); *see also* 28 U.S.C.§ 1404(a) (a court may transfer a civil action to any other

district where it could have been brought "for the convenience of parties and witnesses, in the

interest of justice . . ."). To determine whether a case could have been brought in another

jurisdiction, venue must be proper in the transferee court and the defendant must be "subject to the

process" of the federal court in the transferee district at the time the action was originally filed. *Relf*

*v. Gasch*, 511 F. 2d 804, 806-07 (D.C. Cir. 1975). A defendant is "subject to process" in the

transferee court if the defendant would have been subject to the personal jurisdiction of that court

at the time the case was filed. *Levin v. Majestik Surface Corp.*, 654 F. Supp. 2d 12, 15 (D.D.C.

2009) (citing *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960)). Before a case involving multiple

defendants can be transferred, it must be determined that all defendants would have been subject to

personal jurisdiction in the transferee court at the time the case was originally filed. *Hoffman*, 363

U.S. at 344.

   In requesting transfer instead of dismissal, Plaintiffs do not suggest any particular

forum that would be appropriate. Instead, they state that CC Metals identified various appropriate

transferee courts. *See* Pls.' Opp'n at 19. In fact, CC Metals did no such thing. CC Metals merely

stated that AIMCOR and Elkem Metals can be found in Pennsylvania and that Elkem and CC Metals

can be found in New York. *See* CC Metals' Mot. to Dismiss [Dkt. # 84] at 44 n.22. This does not establish that personal jurisdiction could have been established over all Defendants in any one place at the time these cases were filed. Defendants are residents of Delaware, Pennsylvania, Ohio, New York, Norway, and Germany, and they are not all residents of any single place. Further, Plaintiffs have not pointed to any common place where all Defendants had offices or agents or did business, nor have they indicated any one location (other than this District) where the alleged fraudulent conduct occurred.[14] Because Plaintiffs have not identified any proper forum to which this case could be transferred, their request for transfer will be denied.

## IV. CONCLUSION

As explained above, Plaintiffs have not met their burden of demonstrating a factual basis for personal jurisdiction over Defendants in this District or in any other judicial district. *See Crane*, 894 F.2d at 456 (plaintiff bears the burden of establishing a factual basis for the exercise of personal jurisdiction). Because the Court lacks personal jurisdiction over Defendants, and Plaintiffs have pointed to no judicial district where personal jurisdiction would be proper over all Defendants, Defendants' motions to dismiss will be granted and Plaintiffs' request to transfer will be denied. Accordingly, the Court will grant the following motions to dismiss:

> (1) Motion to Dismiss filed by Elkem Metals, Inc. and Elkem A/S [Civ. No. 01-646, Dkt. # 79 & Civ. No. 01-2678, Dkt. # 29];

> (2) Motion to Dismiss filed by Evonik DeGussa GmbH [Civ. No. 01-646, Dkt. # 80 & Civ. No. 01-2678, Dkt. # 30];

---

[14] CC Metals also notes that Pennsylvania was the location of the majority of the price fixing meetings and that New York was the location of the criminal price fixing trial against CC Metals. *See* CC Metals' Mot. to Dismiss at 44 n.22. But the locations of the price fixing scheme and trial are not relevant here — the relevant alleged conspiracy for the purpose of this lawsuit is the antidumping conspiracy.

(3) Motion to Dismiss filed by Applied Industrial Materials Corporation [Civ. No. 01-646, Dkt. # 82 & Civ. No. 01-2678, Dkt. # 32]; and

(4) Motion to Dismiss filed by CC Metals & Alloys, Inc. [Civ. No. 01-646, Dkt. # 84 & Civ. No. 01-2678, Dkt. # 34].

Further, although Defendant Globe did not refile its motion to dismiss, the grounds set forth in its original filing are well-founded, *see* Globe's Mot. to Dismiss [Dkt. # 17], and the reasoning set forth in this Memorandum Opinion applies equally to Globe as it does to the other Defendants.  Thus, Globe also will be dismissed from these cases.  In addition, TFA will be dismissed, as Plaintiffs no longer pursue their claims against it.  These consolidated cases will be dismissed and closed.


Date:   March 26, 2010                                    /s/
                                              _____
                                              ROSEMARY M. COLLYER
                                              United States District Judge

-16-